STATE of Missouri, Plaintiff-Respondent,

v.

Troy Atwater GORDON, a/k/a Troy A. Gordon, a/k/a Donald Lee Spicer, Defendant-Appellant.

No. 36013.

Missouri Court of Appeals, St. Louis District, Division Two.

March 23, 1976.

Motion for Transfer to Supreme Court Denied May 17, 1976.

Richard E. Snider, Cape Girardeau, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, A. J. Seier, Pros. Atty., Cape Girardeau, for plaintiff-respondent.

KELLY, Judge.

Troy Atwater Gordon, the appellant, was convicted after a trial by jury in the Circuit Court of Cape Girardeau County on a three count Second Amended Information wherein, after alleging that appellant had been previously convicted in the State of Arkansas for delivery of phenobarbital, a crime which if committed in the State of Missouri would be a felony, then alleged in Count I that on November 17, 1973, he distributed to Jo Ann Rose, a female under 21 years of age, a Schedule II Controlled Substance named Desoxyn, in Count II, that on the same day appellant distributed to Tammy Pobst a Schedule II Controlled Substance named Desoxyn, and in Count III that on the same day appellant distributed to Tammy Pobst a Schedule III Controlled Substance named Tuinol. The trial court, after an evidentiary hearing found that the appellant was subject to the provisions of the Second Offender Act, § 556.280 RSMo. 1969, V.A.M.S., and after denying appellant's Motion for New Trial, sentenced him to serve a term of ten (10) years in the custody of the Missouri Department of Corrections on each Count, the sentence on each Count to be served concurrently with the sentence imposed on each of the other two counts. After a timely notice of appeal was filed, this appeal followed.

Appellant charges in the Points Relied On section of his brief that the trial court erred (1) in overruling his motion for directed verdict at the close of the State's case because the State failed to prove that the controlled substances were distributed in violation of § 195.020 and/or 195.240 V.A. M.S.,[1] in that the evidence is that the appellant did not intend to surrender ownership or control of State Exhibits "A," "B" and "C" and thus did not distribute said Exhibits; (2) in overruling his motion for a directed verdict as to two of the three Counts, because even if this court concludes that the evidence proved that the State Exhibits "A," "B" and "C" were distributed, or that this is a possession case, then there can be only one distribution or possession; and (3) in punishing appellant in accordance with § 195.200.1(5) V.A.M.S. because punishment should have been in accordance with § 195.200.1(2) V.A.M.S. Respondent calls to the attention of this court that the error assigned by the appellant in his first point was not raised in either of his motions for judgment of acquittal nor in his motion for new trial and argues therefore that this first point was not preserved for review. We have examined appellant's motion for judgment of acquittal filed at the

---

1. All references to Chapter 195 R.S.Mo.Supp. 1973, the Narcotic Drug Act, are to those sections as they existed at the time this cause was tried, i. e. January 22, 1974, except as otherwise noted.

close of all of the evidence in the cause as well as his Motion for New Trial and we have thereby discerned that of the three points appellant seeks to present to this court for review in the Points Relied On section of his brief, only paragraph 6 of his Motion for New Trial presents anything faintly resembling the points presented here. Paragraph 6 of appellant's Motion for New Trial is:

"In failing to dismiss Count III at the request of the defendant for the reason that the evidence showed that if the acts complained of in Count III and Count II were in fact true, said acts constituted one offense only, in that all drugs which were distributed to the same person mentioned in Count II and Count III were distributed at the same time and in the same containers and such offenses, as set out in said counts were in fact one offense only, notwithstanding the fact that the drugs were of a different schedule."

This allegation of trial court error, broadly construed, might be encompassed within the second point relied on as set out in appellant's brief, but then only with reference to Counts II and III, those Counts wherein it is alleged that two separate Controlled Substances, to-wit: Desoxyn, a Schedule II substance, and Tuinol, a Schedule III substance, were distributed to Tammy Pobst on November 17, 1973.

■ Appellate courts, being courts of review, generally are precluded from affording review to trial court errors which have not in the first instance been presented to the trial court in a Motion for New Trial. In this State, with some few exceptions, points not presented to the trial court in a Motion for New Trial are not preserved for appellate review. Rule 27.20 V.A.M.R., *State v. Meiers,* 412 S.W.2d 478, 481[6] (Mo. 1967). Allegations of error respecting the sufficiency of the information or indictment, verdict, judgment and sentence shall be considered upon an appeal although not raised in the trial court or preserved for review, but the court will consider no allegations of error asserted in the Motion for

New Trial which are not briefed in the appellate court and allegations of error not briefed on appeal will be deemed waived or abandoned. Rule 28.02, V.A.M.R. By Rule 27.20(c) V.A.M.R. the trial court on Motion for New Trial, or the appellate court on appeal, may, when it deems that manifest injustice or miscarriage of justice has resulted therefrom, consider plain errors affecting substantial rights though not raised in the trial court or preserved for review, or defectively raised or preserved. This review is, however, purely discretionary.

■ Appellant's Motion for New Trial is devoid of any reference to the first point presented in his Points Relied On section of the brief filed in this court. It has not, therefore, been preserved for review. However, even if it had been properly preserved for review we would hold that it is without merit, as we shall more fully explain after a statement of the facts viewed most favorably as supportive of the jury verdict.

On the morning of November 19, 1973, David Gaither, a deputy sheriff of Cape Girardeau County and an investigator in the office of the prosecuting attorney of the same county, went to the Sunny Hill Motel and Restaurant within the city of Cape Girardeau, at approximately 9:00 a. m. As he drove into the parking lot of the motel he observed appellant behind a blue Lincoln Continental motor vehicle with Arkansas license plates on it. He drove up to appellant and inquired concerning ownership of the auto and appellant told him that the car belonged to appellant's father. Appellant was then asked who the license plates on the car belonged to and appellant said that he did not know, that they were on the car when his father bought it. When asked who he was, appellant identified himself by means of a driver's license as Donald Lee Spicer. After the conversation between Mr. Gaither and the appellant concluded, the appellant walked due east across the parking lot to where three girls and two boys were standing, a distance of approximately 15 feet. As appellant traversed the

parking lot he had his hands in his pockets. Two of the girls toward whom appellant walked were Tammy Pobst and Jo Ann Rose and they were standing two and a half or three feet apart. The other girl and the two men present were about eight feet to the left of Ms. Pobst and Ms. Rose. Appellant walked directly to where Ms. Pobst and Ms. Rose were standing with his back towards Mr. Gaither and some other law enforcement officers who were there with him.

When appellant came up to Ms. Rose, she inquired if he had anything on him. He replied that he did, and she invited him to give whatever he had on him to her. Appellant then removed his right hand from his right coat pocket, removed two bottles therefrom and put them in the right pocket of Ms. Rose's coat. Almost at the same instant appellant pulled his left hand out of his left coat pocket and in it he had a green looking bottle. He stuck this bottle into the right coat pocket of Ms. Pobst. Upon observing this, Mr. Gaither walked up to appellant, Ms. Rose and Ms. Pobst and placed them under arrest for investigation for burglary. He then took the three girls to the back of the car and asked them to dump everything out of their pockets. Another deputy, Earl Cheek, who was also present, searched the appellant. Ms. Rose removed from her coat pocket two bottles identified at trial as Exhibits "A" and "B". After Ms. Rose removed the two bottles from her pocket Mr. Gaither placed her under arrest on suspicion of possession of narcotics and took her to the back of the patrol car, sat her down and called the juvenile authorities. In the meantime, the two other girls were emptying their pockets. After Mr. Gaither put Ms. Rose in the police car he returned to where the others were and observed the green bottle on the back of a green Cadillac parked there. This bottle was marked Exhibit "C." All three bottles were conveyed to the L.E.A.C. Crime Laboratory at Southeast Missouri State University in Cap Girardeau where they were examined by a criminalist employed there. Exhibits "A" and "B" con-

tained small yellow pills and Exhibit "C" contained nine different types of pills. After the conclusion of a battery of tests the criminalist concluded that Exhibits "A" and "B" contained Desoxyn and that the following pills were in Exhibit "C": 56 yellow pills containing Desoxyn, 40 orange triangular pills containing Dexedrine, 10 tan and clear capsules containing Eskatrol Spansule, 1 pill—"C–4" containing Dexedrine Spansule, 8 black and white pills containing Strasenbaugh Biphetamine 12½, "C–6", a black capsule containing Strasenbaugh Biphetamine 20, "C–8," a pill containing Tuinal, and "C–9," a pill, containing Preludin. According to the criminalist the pills found in Exhibits "A," "B" and "C" contained Schedule II Controlled Substances and Exhibit "C" also contained a pill identified as "C–8"—Tuinal—a Schedule III Controlled Substance. On this evidence the jury found appellant guilty of all three counts of the Second Amended Information.

While we are reticent to review appellant's first point, i. e. that the prosecution failed to prove that the controlled substances were "distributed" as that term is used in § 195.020 and/or § 195.240 V.A.M.S., because this point was not properly preserved for review and because we conclude that it is without merit and would, if properly raised, have been found to be so, we will, nevertheless, dispose of the point.

The thrust of appellant's argument is that the word "distribute" as used in §§ 195.020 and/or 195.240 V.A.M.S., requires an intent to surrender the right, title or interest in the controlled substance on the part of the person transferring it from himself to another. He contends that the evidence in this record refutes any intention on his part to relinquish any right, title or interest he may have had in the controlled substances contained in the three bottles. Rather, he reasons, the evidence clearly proves that in passing the bottles and their contents to the two girls he did so with the intent to avoid being caught with them on his person.

██ The term "distribute" as used in § 195.020 V.A.M.S. is defined in Paragraph

(12) of § 195.010 V.A.M.S. as "to deliver other than by administering or dispensing a controlled substance." "Deliver" is defined in Paragraph (8) of § 195.010 V.A.M.S. as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship."[2] "Transfer" is defined "to carry or take from one person to another" or "to move or send to a different location" or "to cause to pass from one person to another." Merriam-Webster Third New International Dictionary. Appellant contends that the term "transfer" as used in Paragraph (8) defining "Delivery" is the term as defined in Webster's Third New International Dictionary of the English Language, "1a. The conveyance of right, title or interest in either real or personal property from one person to another by sale, gift or other process. b. The removal or acquisition of property by mere delivery with intent of the parties involved to transfer the title." We are required by § 1.090 RSMo. 1969 to take words and phrases in their plain or ordinary and usual sense except, however, technical words and phrases having peculiar and appropriate meaning in law shall be understood according to their technical import. We reach the conclusion that the crime we are considering here is committed when one person divests himself of possession of a controlled substance by passing it from himself to another. And we further conclude that while the statute enumerates a number of different ways in which one may violate it, and some may even overlap, it is not an element of that manner of violation identified as "distribute" that there be a specific intent to convey any right, title or interest in the controlled substance transferred. The mere surrender of possession is sufficient.

Neither the appellant nor the respondent have cited any Missouri cases directly in point. Appellant cites *Veitenheimer v. State,* 501 P.2d 908 (Okl.Cr.1972), *People v. Freeman,* 41 A.D.2d 811, 342 N.Y.S.2d 396 (1973) and *Wood v. Commonwealth,* 214 Va. 97, 197 S.E.2d 200 (1973) but each of these cases is distinguishable and is not controlling here. The respondent cites *Tipton v. State,* 528 P.2d 1115 (Okl.Cr.1974) where the court rejected defendant's contention that he was not guilty of unlawful distribution of a controlled substance when he accompanied an undercover agent to a source of supply and obtained an amount of heroin which he turned over to the agent. This decision was reached on the ground that the applicable statute defined "distribution" in essentially the same terms as the Missouri statute. The same court in *Starks v. State,* 523 P.2d 1108, 1110[2] (1974) held that the term "distribute" as used in a statute prohibiting the distribution of controlled substances means to deliver in any manner other than by administering or dispensing and encompasses the act of selling a controlled dangerous substance. The Oklahoma statute does not contain the word "sale" or "sell" whereas the Missouri statute does. § 195.020. A number of federal cases have construed the word "distribute" or "distribution" as those terms are used in the Comprehensive Drug Abuse and Control Act of 1970, 21 U.S.C.A. § 802[11], to include the mere "handing over" of a controlled substance to constitute a violation of that law proscribing the "distribution" of drugs. *United States v. Pruitt,* 487 F.2d 1241, 1245[4] (8th Cir. 1973); *United States v. Pierce,* 162 U.S.App.D.C. 170, 498 F.2d 712, 713[2] (1974). "Sale," as that term is defined in the Missouri statute, includes "barter, exchange, or gift, or offer there-

**2.** The Narcotic Drug Act, Chapter 195 RSMo. 1971, is closely modeled after the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C.A. § 801 et seq. For the legislative history and purpose of Pub.L. 91–513, see: 1970 U.S.Code Cong.and Adm.News, p. 4566. Its history indicates the Act's broad scope in application—a breadth needed to combat the growing menace of the illicit drug traffic that

has filtered into all strata of society, especially the young. The intent of the Act, in mounting a frontal assault on all aspects of the drug problem, is the basis for the broad definition and application of the terms of the Act.

The "agency relationship" mentioned in the definition of "Deliver" in Paragraph (8) of § 195.010 V.A.M.S. is directed to the elimination of the "procuring agent" defense.

for," § 195.010[30], and implies more than a mere transfer or delivery of possession.[3] Were the term "distribute" to require the same elements as the term "sale" in the statute, it would at best be redundant. We have come to the conclusion that the General Assembly in adopting Ch. 195 intended to relieve the State of the burden of proving all of the elements of a sale in a case of "distribution" of a controlled substance in violation of the law and authorize a conviction upon the mere transfer from one person to another of a forbidden narcotic drug. We therefore find no merit to this point.

Appellant further contends that the State's evidence itself negates any intent on his part to distribute these controlled substances. The foundation for this argument is that the reason he handed these drugs to Ms. Rose and Ms. Pobst was for the purpose of avoiding any difficulties with the police officers which would naturally ensue were the drugs found on his person or in his possession. This, he reasons, negates any intent to surrender ownership or control over the controlled substances and in the absence of such proof a violation was not proven. The State replies with the proposition that proof of intent to surrender ownership or control is not necessary to prove a violation of the statute and that the mere transfer of possession of a controlled substance alone comes within the term "deliver" as used in the statute.

■■■ To make a case of distribution of a controlled substance in violation of § 195.-020 the State had to prove: 1) distribution of the controlled substance to Ms. Rose and/or Ms. Pobst, 2) that Desoxyn is a controlled substance listed in one of the Schedules of § 195.017 of the Narcotic Drug Act, and in Count I, that Ms. Rose was under the age of 21 at the time of the distribution. State v. Platt, 525 S.W.2d 637, 639[1] (Mo.App.1975). § 195.020 does not by its terms require a finding of an intent to distribute; the words "willfully," "intentionally," or "knowingly" do not appear therein. As a general rule, however, a statute defining a crime is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, even when not in terms requuired and before a statute will be construed as to eliminate "intent" as an element of an offense, the legislative intent to do so must be clearly apparent. It has been held, however, that a criminal intent is not an element of the offense where the commission of an act is made a crime without any express reference to intent. Whether criminal intent is an element of a statutory crime depends on the intent of the legislature, and is a matter of statutory construction. State v. McLarty, 414 S.W.2d 315, 318 [1–4] (Mo.1967). The Supreme Court of Missouri has held that under the prior Uniform Narcotic Drug Act and §§ 195.020 and 195.240 that knowledge on the part of an accused that the item sold was a narcotic drug was not included as an element of the offense under either section of the statutes. State v. Page, 395 S.W.2d 146, 149[4, 5] (1965), State v. Napolis, 436 S.W.2d 645, 647[2, 3] (1969). In Page, l.c. 149, the court said: "We find it difficult to conceive of any offense which so adversely affects public welfare and interest as the wrongful sale of narcotic drugs. This unquestionably justifies a State, in the exercise of its police power, to prohibit all sales thereof, except as specifically authorized, and to place on all persons the responsibility to see that they do not sell narcotic drugs unlawfully." This same language was approved in Napolis, l.c. 647, and immediately thereafter the court announced the holding of the case, to-wit: "We hold that the State has the same right, in the exercise of its police power, to prohibit possession, sale, distribution, or transfer of barbituates and stimulant drugs except as specifically authorized in the statute, and that it is not necessary that the legislature make knowledge or criminal intent an element of the offense.

---

3. See: Anno. Construction and effect of "sale" or "sell" in Uniform Narcotic Drug Act, 93 A.L.R.2d 1008.

We find further that the language of § 195.240 indicates a legislative intent not to require such knowledge or criminal intent." These cases are controlling here and are equally applicable to sections of the Narcotic Drug Act of 1971 enacted in lieu of the former Uniform Narcotic Drug Act sections the court in Page and Napolis construed. We hold therefore that the appellant's conviction is not unlawful by reason of the failure of the State to prove the intent he alludes to in his argument. The fallacy of this argument propounded by appellant in this court is that he mistakes motive for intent. As the Supreme Court of Missouri pointed out in *State v. Logan,* 344 Mo. 351, 126 S.W.2d 256, 260[13–15] (1939), "Intent and motive are not in law one and the same thing, although frequently so considered in the popular mind. . . 'Motive is the moving cause which induces action; it has to do wholly with desire. Intent is the purpose or design with which an act is done, and involves the will.'" Motive is an evidentiary fact—a circumstance for argument and the consideration of the jury. While it may have been appellant's "motive" to avoid being apprehended with the drugs on his person, whether he possessed a criminal intent is wholly irrelevant and immaterial to the issues before this court as we have heretofore ruled. There can be no question, under the evidence in this case, that appellant intended to hand over the drugs to both Ms. Rose and Ms. Pobst and thereby surrender possession thereof. That was sufficient evidence, together with proof of the fact that the drugs were Schedule II drugs to support a conviction under § 195.020. The evidence · to support the allegation in the Second Amended Information with respect to Ms. Rose's minority was for the purpose of bringing into the case the penalty provisions of §§ 195.200.1(5) and 195.200.4, and this will be considered in disposing of appellant's third and final point.

Appellant's second point, reduced to its simplest terms, is that there was but a single offense committed under the facts of this case and the trial court should therefore have sustained his Motion for Judgment of Acquittal filed at the close of all of the evidence as to Counts II and III. He contends that the State has "carved out" of one transaction three separate crimes on the ground that the drugs were distributed to two different persons and for the further reason that the drugs allegedly distributed to Ms. Pobst were controlled substances categorized under two different Schedules of the law, § 195.017. The State responds and argues that appellant has not properly preserved this point for review because it was not raised during the course of the trial, and, even in his motion for new trial, when some reference is made to this issue, appellant confined this point to an allegation that Counts II and III constituted parts of the same offense. However, in the event this court should consider this point as plain error under Rule 27.20(c) V.A.M.R., the State argues that by reason of §§ 195.020 and 195.240, three separate offenses were committed. The State identifies the issues before the court with respect to this point as being twofold: 1) can a series of closely related acts constitute separate violations of the same statute for which separate convictions and sentences are returnable and 2) whether a single act can give rise to two separately punishable offenses, a violation of § 195.020 and a violation of § 195.240.

Absent a waiver a person cannot be tried and convicted for a crime which has several incidents included in it, and at the same time be tried for one of those incidents without being twice put in jeopardy for the same offense. The State cannot split a single crime and prosecute it in separate parts. *State v. Parsons,* 513 S.W.2d 430, 438[5, 6] (Mo.1974). The Fifth Amendment to the United States Constitution protects an accused against multiple punishments for a single offense. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). However, a person may by one act violate more than one statute or commit more than one offense for which prosecution for each offense is permissible. *State v. Richardson,* 460 S.W.2d 537, 539[1]

(Mo. banc 1970). While the rules of law are clear, their application is oftimes fraught with difficulties.

■ From the record we discern that this appellant was charged in the magistrate court with "eight other similar charges" and he waived preliminary hearing on each of those charges. Only one charge—an Information charging that on the 19th day of November, 1973, this appellant did unlawfully *deliver* to Jo Ann Rose, a female under the age of 21, a Schedule II Controlled Substance known as Desoxyn— was filed in the circuit court. This charge was brought under § 195.020 and § 195.200, and was filed on December 11, 1973. On December 17, 1973, the appellant was arraigned, the Information was read to him and he entered a plea of not guilty. On January 14, 1974, appellant, through his counsel, filed a "Motion to Compel State to File Additional Charges and to Consolidate," wherein he moved the court to order the State to file Informations for felonies on all charges in which he had waived preliminary hearing in the magistrate court or to dismiss those charges, and in the event that all of said charges were filed, that they be consolidated with the "existing case and tried together." On January 15, 1974, an Amended Information charging appellant with these same offenses now before this court for review was filed and at a pre-trial hearing on January 21, 1974, after the prosecuting attorney had stated to appellant's counsel and the trial court that the three Counts contained in the Amended Information were all of the charges which would be filed against the appellant as a result of the occurrences of November 19, 1973, counsel for appellant made an oral motion to dismiss Count III of the Amended Information for the reason "it is not two separate offenses to deliver a group of controlled substances to one person on the same occasion." A Second Amended Information charging the prior Arkansas felony conviction together with the three Counts charged in the Amended Information and now before this court for review, was filed over

appellant's objection and the trial court then reserved ruling on appellant's motion to dismiss Count III. At no time was there a definitive ruling on this motion to dismiss other than the denial of same by the submission of Count III to the jury in Instruction No. 5 at the close of the evidence. We have previously set out the manner in which this alleged trial error was preserved in appellant's Motion for New Trial. It is clear that appellant did not preserve for review in this court his present contentions that the trial court erred in denying his "motion for a directed verdict" as to two of the three counts prior to filing his brief in this court. His *motion for judgment of acquittal* filed at the close of all of the evidence was on two grounds: 1) the evidence of the State fails to establish facts sufficient to establish the guilt of the defendant beyond a reasonable doubt and 2) under the law and the evidence the State of Missouri has failed to show facts sufficient to submit the issue of the defendant's guilt to the jury. Neither of these are the grounds presented here. We glean, from a reading of Point II of appellant's brief and the argument in support thereof that the Point he is attempting to make is that there was only one distribution of Exhibits "A", "B" and "C" and therefore the trial court erred in overruling "his motion for directed verdict" as to two of the three counts, i. e. Counts II and III. Inasmuch as the Point that Counts II and III were a single continuous transaction together with Count I was never presented to the trial court either (1) prior to trial, (2) during trial nor (3) in appellant's Motion for New Trial, he has not preserved this alleged trial error for review. Rule 27.20 V.A.M.R., *State v. Scott,* 515 . S.W.2d 524, 528[4] (Mo.1974); *State v. Henderson,* 510 S.W.2d 813, 821[12] (Mo.App.1974). Nevertheless we shall dispose of it.

This is, so far as we have been able to determine, the first time this issue has been presented to an appellate court of this State with respect to Ch. 195, the Drug Control Act, since its adoption in 1971. For that reason neither appellant nor the State have

cited any Missouri cases on the Point but rather have applied general principles and cases from other jurisdictions. Appellant relies on *Braden v. United States,* 270 F. 441 (8th Cir. 1920), *Parmagini v. United States,* 42 F.2d 721 (9th Cir. 1930), *State v. Butler,* 112 N.J.Super. 305, 271 A.2d 17 (1970), *Jones v. State,* 482 S.W.2d 194 (Tex. Cr.App.1972), *Wells v. State,* 517 S.W.2d 755 (Tenn.1974), and *Ellis v. State,* 502 S.W.2d 146 (Tex.Cr.App.1973). The State, on the other hand, contends that the holdings in *Braden* and *Parmagini* are of doubtful validity in view of the rule announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.2d 306 (1931), and *Normandale v. United States,* 201 F.2d 463 (5th Cir. 1953). Each party cites other cases which do not consider this issue in the context of a violation of a narcotics law. The authorities cited by appellant stand for the legal principle that where there is but a single transaction, e. g. the sale of two different drugs, at one and the same time to a single individual there is but one offense, and where a defendant is charged in a multi-count indictment for the sale of the one drug, and then in a second count for the sale of the other drug, convicted on both counts and sentenced thereon, the conviction on one of the two counts must be set aside. Those authorities cited by the State, on the other hand, stand for the principle of law that there where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each charge requires proof of an additional fact which the other does not.

◼ The State would distinguish *Braden* and *Parmagini* on the grounds that the statutes in those cases—the Harrison Narcotic Act in *Braden* and both the Harrison Narcotic Act and Jones-Miller Act in *Parmagini*—did not distinguish between the two types of drugs involved in those cases. The drugs in *Braden,* which were found in defendant's apartment at the time of a search, were morphine sulfate, cocaine, her-

oin and opium. All, except cocaine are derivatives of opium. The drugs in *Parmagini,* which were morphine and crude opium, were seized in a single sales transaction of five ounces of the morphine. However, at the time the morphine was delivered an ounce of crude opium adhered to the bottom of the container in which the morphine was delivered. It is the State's position that in this case the appellant violated both § 195.020 and § 195.240 when he distributed Schedule II drugs in violation of the former and a Schedule III drug in violation of the latter; that with respect to Count I and Count II identical evidence would not have been sufficient for the State to prove its charges against appellant because on Count I the jury had to find that appellant distributed a Schedule II substance to Ms. Rose, whereas on Count II the jury had to find that appellant distributed a Schedule II substance to Ms. Pobst. As we construe this argument, the State contends the distribution of the drugs to the two girls, although almost simultaneous, actually constituted two separate transactions and with this we agree. We therefore hold that the trial court did not err in denying appellant's motion to dismiss Counts II and III on the basis that they constituted a single offense with Count I.

◼ The issue remains however, whether Count II and Count III "carved" two offenses out of one. Both appellant and the State have prosecuted this appeal on the basis that violations of § 195.020 constitute one offense under Ch. 195 and of § 195.240 another. This is the way the case was tried in the trial court and the theory on which it is submitted here. Appellant's position on this issue is the same as it was with respect to his attack on the conviction for Counts I and II. The State argues that the test for determining whether a closely related series of acts can give rise to more than one offense is whether identical evidence is required to sustain each offense. From this premise, the State proceeds to the proposition that appellant was charged in Count II with distributing a Schedule II

substance to Ms. Pobst, in violation of § 195.020, whereas in Count III appellant was charged with distributing a Schedule III substance to Ms. Pobst, in violation of § 195.240. Different facts were necessary to sustain convictions on each count because as to Count II the jury had to find that appellant distributed a Schedule II substance to Ms. Pobst, but on Count III the jury had to find that appellant distributed a Schedule III substance to Ms. Pobst, the State maintains. It is clear from the evidence in this case that the only fact which the State would have to establish in Count II which would be any different than the facts to be established in Count III is the nature of the controlled substance passed to Ms. Pobst. In Count II the State, in accordance with its pleadings, had the burden of proving that the controlled substance distributed to Ms. Pobst was Desoxyn, a Schedule II controlled substance. In Count III, that it was Tuinal, a Schedule III controlled substance. Every other fact which would prove Count II would also prove Count III. If, as the parties agree, § 195.-020 defines one offense, and § 195.240 defines another and separate offense under Ch. 195, then it is clear under the "identical evidence test" the appellant could properly be charged with two separate offenses arising out of the single transaction. The courts of the State of California are committed to this position even in those cases where the drugs were chemically of more than one kind, even though of the same legal classification. *People v. Mason,* 276 Cal.App.2d 386, 81 Cal.Rptr. 195, 197[5] (1969) involved the furnishing of seconal and benzedrine to a minor in one package, and the conviction and sentencing of defendant for two distinct violations of the Business and Professions Code, Section 4234, were upheld against his contention that he was guilty of only one offense in selling a single package containing the two drugs to the minor.[4] There is also support for this result if § 195.240 is viewed as a special statute applicable only to Schedules III, IV and V controlled substances whereas § 195.020 is viewed as the statute applicable to Schedules I and II controlled substances. While the General Assembly could have enacted a single statutory provision making it unlawful to distribute any controlled substance and thereby create but one offense with the range of punishment or penalty dependent upon the dangerous nature of the different scheduled drugs involved, it obviously did not. This is what the General Assembly did in enacting the Stealing statute, §§ 560.156 and 560.161 V.A.M.S. Rather, by Laws of Mo.1971, p. 237, H.B. 69 Sec. A, it enacted § 195.020 making it unlawful for "any person to . . . distribute . . . any controlled substance" except as authorized by other sections of the Act. Punishment for violations of this section with respect to Schedule I and II controlled substances is set out in § 195.200. In the same Bill the former law, § 195.240, was repealed and reenacted by removing from the former statute the introductory phrase, "The possession, sale, distribution or transfer of any drug which is designated by the division of health to be a barbituate, stimulant, or hallucinogenic drug" and inserting in lieu thereof the following: "The possession, sale, distribution, or transfer of any controlled substance listed in Schedules III, IV, or V . . . ." Punishment for any violation of § 195.240 was set out in § 195.-270. This we conclude is evidence that it was the intent of the General Assembly in adopting H.B. 69 Sec. A to establish two different offenses and for that reason we find no merit to appellant's contention that the trial court erred in denying his motion to dismiss Count III. We rule this Point against appellant.

4. Other California cases following this rule are: *People v. Mandell,* 90 Cal.App.2d 93, 98, 202 P.2d 348 (1949)—one box containing cocaine, opium and morphine held to support three separate counts; *People v. Lopez,* 169 Cal.App.2d 344, 351, 337 P.2d 570—possession of heroin, marijuana and amidone supported three counts; *People v. Lockwood,* 253 Cal.App.2d 75, 82, 61 Cal.Rptr. 131—possession of codeine and opium supported two counts; *People v. Seaberry,* 260 Cal.App.2d 507, 510, 67 Cal.Rptr. 182 (1968)—possession of seconal and benzedrine supported two counts; *People v. Schroeder,* 264 Cal.App.2d 217, 227, 70 Cal.Rptr. 491 (1968)—possession of opium and morphine supported two counts.

Appellant's third and final point is that he was sentenced under the wrong paragraph of § 195.200.1. The trial judge imposed sentence on Counts I and II of the Second Amended Information under § 195.-200.1(5). Appellant contends here that he should have been sentenced under § 195.-200.1(2).[5] The obvious reason for this contention is that the minimum sentence permissible under § 195.200.1(2) is 5 years whereas the minimum under § 195.200.1(5) is 10 years. The thrust of appellant's argument in support of this point is that there is no punishment specified for "distributing" a Schedule I or II controlled substance provided for in that sub-division of the law; but, rather, the provisions of sub-division (2) of § 195.200.1 for a sentence for a second offense other than selling, giving or delivering of any Schedule I or Schedule II drug are therefore applicable, and is the sub-division under which his sentences should have been imposed. Here again the State calls to our attention that appellant has not preserved this point for review in this court inasmuch as he did not raise it at trial nor in his motion for new trial. We agree. However, there is no merit to his contention and we so hold. The word "distribute" is defined in § 195.010(12) to mean "to deliver other than by administering or dispensing a controlled substance." "Deliver" is defined in subsection (8) to mean "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." It is apparent that the two terms refer to the same basic activity, i. e. a transfer from one person to another, whether there is an agency relationship, and for the purposes of § 195.200.1 (5) the term "deliver" includes the term "distribute." See *State v. Rollins*, 449 S.W.2d 585 (Mo. 1970).

We have reviewed those parts of the record required by Rule 28.02 and find no error.

Having disposed of the appellant's contentions of trial error, the judgment is affirmed.

CLEMENS, P. J., and STEWART, J., concur.

5. This case was tried January 22, 1974, prior to the amendments of § 195.200 by Laws of Mo.1975, p. ——, H.B.No.150 sec. 1.