# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 97-KA-01557-COA

**MARCH MEEK**                                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/12/1997 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH A. FERNALD JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | DIANE Y. JONES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | TRANSFER OF MORE THAN ONE OUNCE OF MARIHUANA (HABITUAL OFFENDER): SENTENCED TO 30 YEARS IN MDOC, THE LAST 20 YEARS TO BE SERVED ON POST RELEASE SUPERVISION; PAY COURT COST AND $2000 FINE |
| DISPOSITION: | AFFIRMED - 02/08/2000 |
| MOTION FOR REHEARING FILED: | 2/22/2000; denied 5/2/2000 |
| CERTIORARI FILED: | 5/16/2000; granted 8/10/2000 |
| MANDATE ISSUED: | |

EN BANC

SOUTHWICK, P.J., FOR THE COURT:

¶1. March Meek was convicted by a Lincoln County Circuit Court jury of unlawful transfer of more than one ounce of marihuana. On appeal Meek alleges that his prosecution violated double jeopardy principles and that the evidence either was insufficient to support the verdict or at least was overwhelmingly contrary to it. We disagree with these contentions and affirm.

**FACTS**

¶2. On Saturday, March 2, 1996, twenty-eight-year-old March Meek asked a female friend, eighteen-year-old Delinah Chauvin, to drive him to the home of a friend, where he planned to spend the night. Upon entering Chauvin's car, Meek placed several items on the passenger side of the back seat, including a pair of jeans, a shirt, tennis shoes and a shaving kit. Later that evening, Chauvin's car was involved in a head-on collision with another car speeding in the wrong lane of travel. Both Chauvin and Meek were injured, Meek suffering a dislocated left elbow and shoulder, a broken left hip, a broken left leg and ankle and a severely lacerated right arm.

¶3. The first person to arrive on the scene was Phillip Hemby, a Baptist preacher and chicken farmer. He testified that when he approached Meek's side of the car, Meek handed him a shaving kit and asked him to dispose of it for him. Hemby said that he was suspicious of the contents of the shaving kit and handed it back to Meek. Then Hemby went to help the driver of the other car. Chauvin later testified that Meek asked her if she could get out of the car because there was something that needed to be disposed of, but she was unable to move at the time, being pinned under the car's dashboard. When Hemby later returned to check on Meek and Chauvin, he saw the shaving kit lying on the shoulder of the road on Meek's side of the car and kicked it into a ditch to preserve it as evidence for law enforcement officers.

¶4. After a state highway patrolman secured the scene of the accident and dispatched the injured to the hospital via ambulance, Hemby pointed out the shaving kit to the officer. The officer opened it and found that it contained marihuana, along with a toothbrush and some shampoo. He locked the shaving kit in the trunk of his car, where it stayed until he delivered it to the Mississippi Crime Laboratory in Jackson for identification and analysis on Monday morning, two days later.

¶5. Meek was indicted and was scheduled to be tried on January 15, 1997. On the morning of the trial prior to the selection of a jury, Chauvin informed the prosecution that she intended to change her story and to testify that the marihuana was hers. The defense would not agree to the State's request for a continuance. The State then orally moved for a *nolle prosequi.* The court granted the request. The appellate record does not contain an order dismissing this first indictment, but testimony describing these events was later taken at a hearing on Meek's double jeopardy claim.

¶6. Chauvin subsequently recanted her recantation and stated that she had been persuaded by Meek, whom she had been dating, to claim ownership of the marihuana because, as a first-offender, she believed that she would only get probation. With Chauvin once more ready to testify against Meek, the State obtained a new indictment. Meek was brought to trial on November 3, 1997.

¶7. At the beginning of the second trial, Meek moved to dismiss, asserting that the second indictment violated his double jeopardy rights. The motion was overruled. The jury found Meek guilty of transferring the controlled substance. Meek's appeal was deflected to this Court.

## DISCUSSION

### I. *Double Jeopardy*

¶8. The threshold issue is double jeopardy, since a resolution on it favorable to Meek will make the remaining issues moot. Meek argues that jeopardy attached at the first trial date of January 15, 1997. The court had questioned the veniremen and administered their oath before turning them over to the State for voir dire. It was at that point that the State sought a continuance because of the change in one of its

witness's potential testimony.

¶9. The United States Supreme Court has held that jeopardy attaches in a jury trial when the jury is empaneled and sworn, holding that this is an integral part of the Fifth Amendment applicable to the states by the Fourteenth Amendment. *Crist v. Bretz*, 437 U.S. 28, 37-38 (1978).

> The reason for holding that jeopardy attaches when the jury is empaneled and sworn lies in the need to protect the interest of an accused in retaining a chosen jury. . . . It is an interest with roots deep in the historic development of trial by jury in the Anglo-American system of criminal justice. Throughout that history there ran a strong tradition that once banded together a jury should not be discharged until it had completed its solemn task of announcing a verdict.

*Id* at 35-36. This principle has been acknowledged in state jurisprudence. *McGraw v. State*, 688 So.2d 764, 767 (Miss. 1997).

¶10. In the present case, a venire from which a jury of twelve still needed to be selected had been asked general questions by the court. The parties' individual voir dire had not commenced and the jurors who would hear this particular case had not been chosen. To use the terms of *Crist,* a jury was never "banded together" and it never became a "particular tribunal" for the purpose of hearing evidence. *Crist*, 437 U.S. at 35-36. Therefore, the constitutional guarantee against double jeopardy never attached and could not have been violated.

¶11. We need only briefly address the separate issue of the effect of the order granting a *nolle prosequi.* An entry of a *nolle prosequi* ends a particular case on the docket, but absent prejudice it does not bar prosecution for the same offense if commenced in the court where the case originated. *Beckwith v. State*, 707 So.2d 547, 569 (Miss. 1998). Likewise, no prejudice to Meek resulted from the *nolle prosequi* of the first indictment since the second indictment was tried in the same court in which the first had been scheduled to commence, and all material evidence had been preserved from the prior proceeding.

## II. *Transfer Within the Meaning of the Statute*

¶12. Meek argues that the State failed to prove the essential elements of the offense. The State relied upon this statute to indict Meek for transfer of a controlled substance:

> (a) Except as authorized by this article, it is unlawful for any person knowingly or intentionally:

> (1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance . . . .

Miss. Code Ann. § 41-29-139(a)(1) (Supp. 1999).

¶13. Meek's argument focuses first on whether the State proved that he knowingly possessed the marihuana; if he did not know of the marihuana, then he may not have made a wilful transfer. Second, he asserts that there was no transfer. Finally, Meek argues that the location of the word "intent" in the statute means that the transfer must be "a transaction that places the controlled substance in commerce for use or pecuniary gain." We look at each argument separately.

### A. Proof of Possession

¶14. Meek agrees that marihuana was found in his shaving bag, and that he placed that bag in Chauvin's car. However, he argues that the bag did not remain in his sole dominion and control, leaving a reasonable doubt as to who placed the marihuana in the bag. Meek testified at trial that he was not aware that his shaving kit contained marihuana, and he denied trying to retrieve the kit after the wreck and attempting to hand it to Hemby or throwing it to the side of the road.

¶15. To determine whether there was sufficient evidence to sustain a conviction, we consider all of the evidence in the light most consistent with the verdict, giving that verdict the benefit of all favorable inferences that may reasonably be drawn from the evidence. Only if we conclude that under that view of the evidence, reasonable jurors could not have found guilt beyond a reasonable doubt, will we reverse. *McFee v. State*, 511 So.2d 130, 133-34 (Miss. 1987).

¶16. Meek admitted ownership of the shaving kit in which the drugs were found, and also that he owned the small bottle of shampoo and the toothbrush found in the shaving kit. He admitted placing the kit in the back seat of Chauvin's car. The pair then drove to the house trailer of one of Chauvin's friends. They were there for an hour, then began their brief automobile ride that ended with a collision. Though the vehicle was allegedly outside Meek's view for an hour and Meek's appellate brief, without any supporting testimony that we can find in the record, alleges the car was unlocked, it was for the jury to decide whether another person for reasons unknown secreted marihuana in his shaving kit during his stay at the trailer. In addition, both Chauvin and Hemby testified that Meek tried immediately after the wreck to get them to dispose of the shaving kit. The jury could decide that the reason for that zeal was something other than embarrassment regarding his toothbrush. There was substantial credible evidence that he was the knowing possessor of the contraband.

### B. Transfer in Fact

¶17. Even if he had knowledge and control of the marihuana, Meek argues that he did not transfer it as alleged in the indictment. We repeat that the statute provides that a person may not "sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance . . . ." Miss. Code Ann. § 41-29-139(a)(1).

¶18. The testimony of the Good Samaritan Hemby and of the passenger Chauvin was that Meek tried immediately after the wreck to get them to dispose of the shaving kit containing concealed marihuana. Meek gave the shaving kit to Hemby, whose suspicions led him to give it right back.

¶19. Whether this was a transfer should first be addressed by the definitions that are statutorily provided. "Transfer" is not defined, but similar words are:

> (h) "Deliver" or "delivery" means the actual, constructive, or attempted transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship . . . .

> (l) "Distribute" means to deliver other than by administering or dispensing a controlled substance.

Miss. Code Ann. § 41-29-105 (Supp. 1999).

¶20. Some words are interchangeable under this statute. The supreme court has held that "transfer" is the equivalent of "deliver" and vice versa. *Evans v. State*, 460 So.2d 824, 828 (Miss. 1984). The statutory definition of "deliver" is relatively broad, as even just an attempted transfer of the substance from one

person to another is within the meaning of the word. Miss. Code Ann. § 41-29-105(h) (Supp. 1999). The supreme court has analyzed this broad language as being intended "to relieve the state of the task, oftentimes difficult if not impossible, of proving the consideration paid for the contraband, its intentions being to thwart the exchange or transfer of the substance whether accompanied by consideration or not." *Wilkins v. State*, 273 So.2d 177 (Miss. 1973).

¶21. "Distribute" is the other word in the statute similar to "transfer." Distributing a controlled substance as defined in the statute "includes transactions which are sales as well as transactions which may not be considered sales." *Rogers v. State*, 599 So.2d 930, 934 (Miss. 1992). "Distribute" is the same thing as "deliver," and "deliver" can include an "attempted transfer" under section 41-29-105(*l*). Miss. Code § 41-29-139(a). "Deliver" therefore includes successful deliveries and failed ones. Though circular, we find that since "transfer" can mean "deliver," and "deliver" can mean "attempted transfer," the use of the word "transfer" in the statute and in the indictment is broad enough to include the attempt to transfer. The various words all seem to encompass attempts to commit the acts. To find that "deliver" includes an attempted transfer as the statute provides, but "transfer" does not include an attempted transfer, is to make an unreasonable distinction among synonyms.

¶22. Therefore, the exchange of consideration, the intent to place the contraband in commerce, and even the success of the transfer are irrelevant to a factual determination of transfer or delivery.

¶23. We acknowledge that the facts of a transfer to a stranger for the purpose of hiding evidence have not been in any Mississippi appellate decision under this statute. The trial court concluded that "to transfer means to pass from one hand to the other," finding that "based on the evidence that is before the Court, the controlled substance passed from the hand of Mr. Meek to the hand of Reverend Hemby." The trial court was correct if the literal meaning of words in the statute control.

¶24. In the absence of a Mississippi Supreme Court interpretation, we look to whether other states have found similar acts to constitute the required "transfer" or "delivery." That kind of review is especially useful since this statute is taken from a uniform law adopted in roughly equivalent form by Congress and by a large number of states. Uniform Controlled Substances Act 1970, 9 U.L.A. 643 (1997); adopted 1971 Miss. Laws ch. 521; *see* Miss. Code Ann. § 41-29-101 (Rev. 1993).

¶25. Several courts have held that if the possessor of drugs shares them without compensation and for immediate use by an acquaintance, that is still within the meaning of "transfer." One court observed that the "offense does not require a finding of intent to sell, or to engage in commerce in marihuana. All that need be shown is a purpose of sharing the cache with at least one other person." *State v. Salyer*, 884 S.W.2d 354, 357 (Mo.App. 1994), citing *United States v. Coady*, 809 F.2d 119 (1st Cir.1987). In another case the defendant admitted that he planned to share the drugs with a friend, which led the court to conclude that "giving or sharing drugs with another constitutes distribution under the law, and an intention to share is evidence of an intent to distribute." *Wright v. United States*, 588 A.2d 260, 262 (D.C. 1991).

¶26. One intermediate state court on quite similar facts held that the accused was guilty of delivery of a controlled substance. *State v. Gordon*, 536 S.W.2d 811, 817 (Mo. App. 1976). The evidence was that upon seeing police, Gordon walked up to several children and apparently with the children's willing and knowing cooperation got them to place several bottles of illegal drugs into their coats. The court held that this voluntary surrendering of possession to third persons was sufficient to prove an illegal transfer. Gordon's argument was that the evidence "refutes any intention on his part to relinquish any right, title or

interest he may have had in the controlled substances contained in the three bottles. Rather, he reasons, the evidence clearly proves that in passing the bottles and their contents to the two girls he did so with the intent to avoid being caught with them on his person." *Id.* at 815. Even if true, the court found the act to be a "delivery."

¶27. The *Gordon* opinion was later overruled because one of the linchpins for the result was the court's holding that an intent to relinquish control was not an element of the offense. *Id.* The Missouri Supreme Court disagreed. *State v. Green*, 629 S.W.2d 326, 329 (Mo. 1982), overruling *Gordon* and *State v. Meek,* 584 S.W.2d 168 (Mo. App.1979).

¶28. What is different about what Meek did and *Gordon* is that there is some implication from *Gordon's* stated facts that the children would later give the drugs back to Gordon when the police left. Therefore he may not have had the intent permanently to relinquish control. Here there is no such suggestion in the evidence since Meek told Hemby to "get rid" of the kit. Thus even were we to agree with the *Green* conclusion that an intent must exist to transfer possession permanently, Meek would be guilty. To apply the Missouri *Gordon* case, as revised by the requirement of intent, had Meek given the bag containing drugs to two children in a schoolyard and told them to get rid of the bag, that would be a transfer.

¶29. Some potentially relevant additional case law should be examined. First, to prove a transfer there is no need to show an intent to sell, as is necessary under an indictment for possession with intent to sell. *E.g., Taylor v. State,* 656 So. 2d 104, 108 (Miss. 1995). The undeniable distinction here is that Meek was indicted for "transfer," a word that appears along with others in the statute that together "relieve the state of the task, oftentimes difficult if not impossible," of proving an intent to sell. *Wilkins*, 273 So.2d at 177.

¶30. Further, one Mississippi case discussed sharing contraband with others, but we do not read the decision as necessarily resolving the criminality, beyond possession alone, of that sharing.

> If a smoker gives an acquaintance a few cigarettes from his package, or a pack from his carton, does that mean he possessed the tobacco with an intent to distribute? Clearly he is guilty of actually distributing the tobacco he gives his friend, but does this mean he possessed the pack, or carton, with an intent to sell or distribute? That question, however, must wait another day for an answer, because--while almost--it is not quite presented here.

*Stringfield v. State*, 588 So. 2d 438, 439 (Miss. 1991). The second quoted sentence answers a hypothetical. We do not know if the court was concluding that the actual defendant Stringfield, by giving a controlled substance to a friend, was guilty of distribution but may not be guilty of possession with intent to distribute. Why the latter was not presented in the case is that Stringfield was indicted for having the intent to distribute the cocaine that he possessed at the time of his arrest. *Id.* The evidence that he had *earlier* distributed cocaine to two people as a form of payment for help in converting powdered to rock cocaine, was not sufficient to show that he had an intent to distribute the relatively small quantity of cocaine that he still possessed when he was arrested. *Id.* at 441.

¶31. One way to read the *Stringfield* quote is that it was deferring any conclusion that the giving of a small quantity of drugs to a friend was "distribution" as meant under the statute, though it quite literally would fit most dictionary definitions of "distribution." Regardless of how far the *Stringfeld* quote should be read, it would be *dicta* anyway. Whether we are deciding in the first instance or merely following *Stringfield*, we find that a transfer occurred.

¶32. The logic of this interpretation should not be ignored. What occurred here is equally amenable to the legislature's heightened scrutiny as would be a person's attempt to sell the single rock of crack cocaine that he had initially purchased only for personal use. Further, if he decided that instead of selling, he would give it away to a known user, that too is beyond mere possession. And finally, if as here a user decides to give the drugs to someone who may be unaware of what he is getting, but the accused is willing to risk that this person will be a user or become one because of the opportunity, it is within the language of this statute to consider that more than possession. Quite simply, the risk to society is magnified when a criminal moves from keeping drugs to himself and attempts to transfer drugs to others.

¶33. The trial court provided the jury this guidance on the question:

> the definition of "transfer" is to convey or remove something from one place, person, et cetera, to another, or to cause something to pass from one person to another; or to pass over the possession or control of something.

¶34. This interpretation is entirely consistent with the meaning of the statute. The prosecution proved that at least an attempted transfer occurred. Hemby testified that when he approached Meek's side of the automobile to check on his injuries, Meek was holding the shaving kit in his hands. He handed the kit to Hemby, saying "get rid of this" for him. The fact that Hemby held the kit for only a few seconds at most before returning it to Meek might prove that the transfer was not completed. Regardless of whether that is true, the statute also criminalizes in the same fashion an attempt to transfer. Miss. Code Ann. § 41-29-105(h) (Supp. 1999).

¶35. The legislature chose the words of the statute. It is for us to enforce them. There was at least an attempted transfer as defined in the statute.

### C. Statutory Intent

¶36. Meek argues that the statute requires that the transfer be with the intent to sell the marihuana or to "place it in commerce." That argument arises from the statute's providing that no one shall "sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance . . . ." Miss. Code Ann. § 41-29-139(a)(1) (Supp. 1999). Meek would have us conclude that the phrase "intent to sell" applies to all the actions criminalized by the statute. The less forced reading of the statute is that a conviction may be sustained if there is evidence that a person sold, manufactured or transferred. There may also be a conviction based on evidence that a person still possessing the contraband had the intention to sell, manufacture, or transfer. The accused must have some mental state of knowledge and intent depending on the nature of the act, but there is nothing in the statute that would suggest that every act done must be with the intent to sell. In fact, as already discussed one of the reasons for the words "delivery" and "transfer" is to avoid the need for proof that there was a profit motive.

¶37. The trial court was correct in its definition of "transfer" and in its decision not to grant a directed verdict to the defense on this basis.

## III. *Weight of Evidence*

¶38. Finally, Meek assigns as error the trial court's refusal to grant his motion for a new trial since he

believes the guilty verdict ignored the overwhelming weight of the evidence.

¶39. Meek refers to inconsistencies in the testimony of Hemby, Chauvin, and the investigating officer. While it is true that Chauvin gave a prior inconsistent statement resulting in the entry of a *nolle prosequi* in the first indictment, the reasons for that statement are detailed in her testimony at trial. What to make of those inconsistencies was an issue for the jury. Apparently Chauvin's explanation satisfied the jury that the change in her testimony was a result of her becoming aware of Meek's manipulation of her feelings for him.

¶40. The jury assays the credibility of witnesses and the weight to be given their testimony. *Collier v. State*, 711 So. 2d 458, 462 (Miss. 1998). Here, the jury found the testimony of the prosecution's witnesses credible and failed to believe Meek's denials of ownership, control and transfer of the marihuana. These are the conclusions of a reasonable jury and are not against the weight of the evidence presented at trial.

¶41. **THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY OF CONVICTION AS A HABITUAL OFFENDER OF UNLAWFUL TRANSFER OF MORE THAN ONE OUNCE OF MARIHUANA AND ENHANCED SENTENCE OF THIRTY YEARS, TO SERVE THE FIRST TEN YEARS, WITH THE LAST TWENTY YEARS TO BE SERVED ON POST-RELEASE SUPERVISION, AND THE PAYMENT OF COURT COSTS AND A $2, 000 FINE, IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**McMILLIN, C.J., BRIDGES, IRVING, AND PAYNE, JJ., CONCUR.**

**DIAZ, J., CONCURRING IN PART AND DISSENTING IN PART, WITH SEPARATE WRITTEN OPINION, JOINED BY KING, P.J., LEE, MOORE AND THOMAS, JJ.**

DIAZ, J., CONCURRING IN PART, DISSENTING IN PART:

¶42. I agree with the majority opinion to the extent that it holds that March Meek had possession of the marijuana that was recovered at the scene of the car wreck. However, I do not agree with the majority's interpretation of the Mississippi Code Annotated Section 41-29-139 (Supp. 1999) which prohibits, *inter alia*, possession of a controlled substance with intent to transfer that substance.

¶43. In the case *sub judice*, Meek was pinned inside the passenger side of an automobile after surviving a head-on collision. In his shaving kit, he had concealed 140.9 grams of marijuana which was wrapped in two layers of cellophane. Phillip Hemby, the first person to approach the wreck, testified that Meek asked him "to get rid of his shaving kit." Meek disputes both possessing the marijuana and asking Hemby to hide it. As I have stated, I am not persuaded by Meek's argument that he did not possess the marijuana, but assuming *arguendo* that Meek did ask Hemby to dispose of his shaving kit, I do not agree with the majority's decision to affirm the conviction of possession with intent to transfer because it does not consider relevant Mississippi case law and it defies logic.

¶44. The majority relies on admittedly circular reasoning to define the word transfer as it appears in Meek's indictment and Section 41-29-139. Through the juxtaposition of several synonyms of "transfer", the majority asks us to take a mental leap and equate transfer and attempted transfer in the language of the statute and the indictment. The majority further concludes that the exchange of consideration, the intent to place the contraband in commerce, and the success of the transfer are irrelevant to Meek's situation. This

analysis of the word transfer and the majority's implications of that definition simply are not applicable to the facts of this case since Meek was not transferring the drugs under the statute.

¶45. The majority contends that Meek's action of attempting to hand the concealed drugs to Hemby constituted sharing the drugs which, under case law from other jurisdictions cited by the majority, brought Meek's action within the meaning of the word transfer. However, the majority fails to consider numerous cases in Mississippi that specifically address scenarios similar to the case at bar. In these cases, which include convictions for both marijuana and cocaine possession, facts did not exist to warrant convictions for intent to distribute the contraband.

¶46. "The evidence sufficient to infer intent to sell must be evaluated in each case." *Jackson v. State*, 580 So. 2d 1217, 1220 (Miss. 1991). The seminal case in Mississippi addressing the issues of sharing drugs and possessing drugs versus possessing a drug with intent to transfer is *Stringfield v. State*, 588 So. 2d 438 (Miss. 1991). In that case, Stringfield asked a friend to help him find someone to convert his powder cocaine into rock form. After finding someone to perform the task and the procedure was completed, Stringfield gave a portion of the rock cocaine to his friend and the third party. Stringfield was later arrested with nearly half an ounce of the rock cocaine on his person. *Id*. at 439. In *Stringfield,* the supreme court held that:

> [P]roof of possession with an intent to distribute or sell should not be based solely upon surmise or suspicion. There must be evidentiary facts which will rationally produce in the minds of jurors a certainty, a conviction beyond reasonable doubt that the defendant *did in actual fact intend to distribute or sell the cocaine [or marijuana], not that he might have such an intent.*

*Id*. at 440 (emphasis added). At trial, Stringfield admitted that he possessed enough rock cocaine for nearly four days personal consumption. *Id.* at 440. The supreme court noted that this was not an unusual precaution for someone who was avoiding legal entanglements associated with supporting his habit when considered with the efforts by law enforcement officers to curtail the purchase and sale of cocaine. *Id*. Despite Stringfield's actions of sharing the rock cocaine with two other people, the supreme court did not find that his benevolence constituted intent to distribute *Id*. at 441.

> [C]riminal intent may, and ordinarily can only be shown by surrounding circumstances. . . . [A] jury may reasonably conclude that a defendant intended to unlawfully distribute a controlled substance, if the quantity or nature of the seized substance evidences an intent to distribute-as opposed to an intent merely to possess for personal use. Where the quantity or nature is such that it merely reflects possession for personal use [instead of] an intent to distribute [or transfer], then only a suspicion of intent is raised.

*Taylor v. State*, 656 So. 2d 104, 108 (Miss. 1995) (internal citations omitted). In *Taylor*, no direct evidence existed that Taylor had sold or intended to sell crack cocaine on the day he was arrested despite the fact that Taylor was associating with a known drug dealer under circumstances that the testifying officers considered typical drug activity viz. standing on a curb with a small quantity of crack in their hands and approaching cars that stop with their "wares." *Id*. at 106. The supreme court held that the evidence presented by the State was insufficient even though Taylor's conduct "was similar to that of others who traffic in drugs, and the cocaine was packaged in individual packets." *Id*.

¶47. Where intent to sell or transfer cannot be inferred from the circumstances, the quantity of the drugs

recovered gives rise to presumption of intent to transfer. As noted by the supreme court, "Quantity, standing alone, might be insufficient to demonstrate an intent to distribute [or transfer] beyond a reasonable doubt." *Edwards v. State*, 615 So. 2d 590, 595 (Miss. 1993). However, in *Guilbeau v. State*, 502 So. 2d 639, 642 (Miss. 1987), the Mississippi Supreme Court held that the possession of 5,100 pounds of marijuana was sufficient to establish intent to distribute. The same conclusion was reached with regard to 348 pounds of marijuana in *Boches v. State*, 506 So. 2d 254, 260 (Miss. 1987). In *Jackson*, the defendant was accused of the possession with the intent to distribute marijuana packaged in six "nickel" bags. The court found the evidence insufficient to convict Jackson of possession with intent to distribute the marijuana even though he possessed six bags of marijuana and $103 in cash in his pocket.

¶48. Mississippi Code Annotated Section 41-29-139(a) (Supp. 1999) sets forth the penalty for any person knowingly or intentionally transferring or possessing with intent to transfer a controlled substance. Under subsection (b)(1), violators of subsection (a) who possess more than an ounce of marijuana may be imprisoned for not more than thirty years and fined at least $5000 and not more than $1,000,000.

¶49. Mississippi Code Annotated Section 41-29-139 (c) (2) (C) states in part that any person knowingly or intentionally possessing more than thirty grams but less than 250 grams may be fined not more than $1,000, or confined in the county jail for not more than one year, or both; or fined not more than $3,000, or imprisoned for not more than three years, or both.

¶50. "There is, of course, a very good reason for the difference in severity of sentence between a user and a peddler of cocaine [or marijuana], the latter posing a threat to society, the former a threat to himself." *Stringfield*, 588 So. 2d at 440. Here, Meek was not giving away "free samples of drugs" as the majority suggests; he was trying to conceal evidence, which is a different crime altogether. Even if Meek were attempting to share his marijuana with Hemby, he would not be guilty of possession with intent to transfer since the Mississippi Supreme Court, in cases similar to Meek's, has remanded for re-sentencing on the lesser-included-offense of possession where the poof was insufficient to support a charge of possession with intent to transfer. *Miller v. State*, 634 So. 2d 127 (Miss. 1994); *Jowers v. State*, 593 So. 2d 46 (Miss. 1992); *Thomas v. State*, 591 So. 2d 837 (Miss. 1991); *Jackson v. State*, 580 So. 2d 1217 (Miss. 1991).

¶51. The proof of intent to transfer is insufficient and cannot stand under the facts of this case. This case should be reversed on possession with intent to transfer, but affirmed and remanded for re-sentencing on possession alone.

**KING, P.J., LEE, MOORE, AND THOMAS, JJ., JOIN THIS SEPARATE OPINION.**