## CAIN v. UNITED STATES. *

Circuit Court of Appeals. Eighth Circuit.
May 6, 1927.

No. 7625.

1. Poisons ⊜═2—Harrison Anti-Narcotic Act held not unconstitutionally to invade state police power (Comp. St. §§ 6287g–6287q).

The Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q) *held* constitutional, against contention that it invades local police powers of the state of Minnesota.

2. Courts ⊜═96(1)—Circuit Court of Appeals would not adjudge unconstitutional act declared valid by Supreme Court (Harrison Anti-Narcotic Act [Comp. St. §§ 6287g–6287q]).

The Circuit Court of Appeals would not adjudge the Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q) unconstitutional, where the Supreme Court of the United States had declared it valid.

3. Indictment and information ⊜═125(42)—Indictment for selling and sending morphine through mails held double, where delivery by mail was necessary to both offenses (Harrison Anti-Narcotic Act [Comp. St. §§ 6287g–6287q]).

Indictment for violating the Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), in two counts, for selling morphine and sending morphine by mail, *held* double, where act of delivery through the mail was an element necessary to both offenses, without which neither could have been consummated.

4. Criminal law ⊜═200(1)—One would be put twice in jeopardy if tried on element of crime for which he has been convicted.

Where a person has been tried and convicted for a crime which has various elements included in it, he cannot be a second time tried for one of those elements without being twice put in jeopardy for the same offense.

5. Jury ⊜═80—Defendant in criminal case is not entitled to have jury selected from entire panel in venire for term.

Defendant in narcotic case is not entitled to have trial jury selected from entire panel embraced in venire for the term; a jury of twelve unbiased and unprejudiced jurors from the regular panel being sufficient.

6. Criminal law ⊜═37—One without intention of violating law may not be convicted for crime committed through machinations of officers.

One who is not, and recently perhaps has not been, violating the law, may not be convicted for committing a crime induced through impelling machinations of officers.

7. Criminal law ⊜═37—One in business of unlawfully selling narcotics may be convicted of sale induced by customer's letter, written at officers' instigation (Harrison Anti-Narcotic Act [Comp. St. §§ 6287g–6287q]).

One engaged in business of unlawfully selling narcotics may be convicted under the Harrison Anti-Narcotic Act (Comp. St. §§

6287g–6287q) for another sale, induced by a letter written at instigation of state officers by one to whom he had made other sales.

8. Criminal law ⊜═1048—Any act of court in criminal case may be preserved for review by exception.

Any act of the court itself in a criminal case may be preserved for review by a mere exception.

9. Criminal law ⊜═1035(3)—Remarks of government counsel on accused's appearance held not reviewable, in absence of objection (Harrison Anti-Narcotic Act [Comp. St. §§ 6287g–6287q]).

In prosecution under the Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), remarks of government counsel on appearance of defendant and inference he was still handling narcotics *held* not reviewable, where no objection was then made; the matter not being sufficiently grave to be noticed by the Circuit Court of Appeals, of its own volition.

10. Criminal law ⊜═753(3)—Instruction requiring jury to find accused guilty on both counts of indictment, if on either, held error (Harrison Anti-Narcotic Act [Comp. St. §§ 6287g–6287q]).

Instruction, in prosecution under Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), requiring jury to find defendant guilty in both charges of indictment for selling and sending narcotics by mail, if it should find him guilty in either, *held* error, although, if he were found guilty of one count, any other verdict than guilty of both would have been contradictory; the trial court being always without right to require conviction.

11. Criminal law ⊜═753(2)—Indictment and information ⊜═132(5)—Court should have required government to elect, or instructed acquittal on one count, where evidence showed indictment was double (Harrison Anti-Narcotic Act [Comp. St. §§ 6287g–6287q]).

Under indictment for selling and for sending narcotics by mail, in violation of Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), where evidence disclosed that act of delivery by mail was essential element of either offense and therefore indictment was double, trial court should either have required the government to elect between counts or instructed the jury, if it found defendant guilty on one count, to acquit on the other.

12. Poisons ⊜═9—Indictment charging sale and sending morphine through mail held not at variance with proof as to morphine hydrochloride.

Indictment charging that morphine was sold and sent through the mail *held* not at variance with proof that morphine hydrochloride was the specific kind of morphine dealt with.

13. Criminal law ⊜═304(2)—Courts will judicially notice morphine is chief alkaloid derivative of opium.

Courts will judicially notice that morphine is the chief alkaloid derivative of opium.

*Rehearing denied July 13, 1927.

**14. Criminal law ☞304(2)—Courts will judicially notice commercial morphine is acetate, sulphate, and hydrocholoride.**

Courts will judicially notice that commercial morphine is of three sorts, acetate, sulphate, and hydrochloride; each being a narcotic derivative of opium.

**15. Indictment and information ☞121(4)—Defendant under Harrison Anti-Narcotic Act would not be entitled to ask more than advice as to species of morphine referred to (Comp. St. §§ 6287g–6287q).**

Defendant, in prosecution under the Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q) for selling and sending morphine through the mails, would not have been entitled, in request for bill of particulars, to ask more than that he be advised touching the species of morphine he was accused of dealing with.

In Error to the District Court of the United States for the District of Minnesota; Joseph W. Molyneaux, Judge.

Paul Cain was convicted of violating the Harrison Anti-Narcotic Act, and he brings error. Reversed and remanded.

Donald G. Hughes, of Minneapolis, Minn. (Neil Hughes, of Minneapolis, Minn., on the brief), for plaintiff in error.

James A. Wharton, Asst. U. S. Atty., of St. Paul, Minn. (Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., on the brief), for the United States.

Before BOOTH, Circuit Judge, and FARIS and DAVIS, District Judges.

FARIS, District Judge. Plaintiff in error, convicted upon each of two counts of an indictment for violating the Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), for that (1) "he did then and there knowingly deal in, dispense, sell, and distribute" to one Draper, and (2) "unlawfully and feloniously did then and there knowingly send to said Draper certain morphine by mailing same to said Draper," brings error to reverse such convictions and consecutive sentences thereunder of 5 years and a fine of $2,000 on each count.

Defendant, a resident of Minneapolis, Minn., had on several prior occasions, it was discovered, sold morphine to Draper, a resident of California, by sending same through the mail. Certain officers of the state of California, being advised of the former sales by defendant to Draper, induced the latter to write a letter to defendant requesting him to send to Draper an ounce of morphine. In this letter these officers put a post office money order for the sum of $35, and sent the same to defendant at his street address in Minneapolis. In due course, a package came from Minneapolis by registered mail to Draper at Madera, Cal. This package was receipted for by Draper, turned over by him to the officers, and when opened found to contain an ounce of morphine hydrochloride. The money order so sent by letter to defendant at Minneapolis was afterwards cashed by defendant; but the evidence shows that the package containing the morphine was not mailed by defendant, but by some woman whose identity was not disclosed upon the trial.

Forty-five errors are assigned as grounds for reversal. Pretermitting the seemingly legal and physical impossibility of any court being able to commit so many errors in a single trial, it may be said that for the major part these assignments are frivolous, and served below merely to waste time and hamper orderly procedure, and serve here only to needlessly increase the bulk of the record.

Some of these alleged errors are strenuously urged, both in the brief and in oral argument, and some of them are, in the view we take of the case, serious. Those so urged, and seemingly especially relied on and meriting discussion are: (a) That the Harrison Anti-Narcotic Act invades the local police powers of the several states, particularly the state of Minnesota, and there exists in the federal Constitution no grant of power to justify such invasion; (b) that the indictment is, as alleged, "double," that is, the second count is a repetition of the first and charges the identical acts as constituting a crime as are charged in the first count; (c) that the jury was improperly constituted, for that it was made up of only a part of the regular panel, the remainder of such panel being engaged in the trial of another case in another court; (d) that the facts shown by the evidence disclose a case of entrapment, for that defendant was induced to commit a crime solely by the machinations and inducements of the officers, which crime he was not in the habit of committing, and which he would not have committed but for such acts and inducements; (e) that the charge of the court, is erroneous, for that the court in his charge, among other things said, "if you find him guilty in one charge, you must find him guilty in both"; and (f) that there is a variance between the charge and the proof, in that the indictment charged simply that morphine was sold and sent, and the proof showed that the specific article dealt with in both counts was morphine hydrochloride.

[1, 2] The question of the constitutionality of the Harrison Anti-Narcotic Act has been

raised in quite a number of cases and quite a respectable part of bench and bar has doubted its validity. But it was held valid by this court in the case of Hughes v. United States, 253 F. 543, and by the Supreme Court of the United States, in the cases of Webb v. United States, 249 U. S. 96, 39 S. Ct. 217, 63 L. Ed. 497, United States v. Doremus, 249 U. S. 86, 39 S. Ct. 214, 63 L. Ed. 493, United States v. Jin Fuey Moy, 241 U. S. 394, 36 S. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854, and United States v. Wong Sing, 260 U. S. 18, 43 S. Ct. 7, 67 L. Ed. 105, as also, on particular phases, in many other cases. While the Supreme Court in the case of United States v. Daugherty, 269 U. S. 360, 46 S. Ct. 156, 70 L. Ed. 309, seems by some language therein to voice a doubt as to the constitutional validity of the act and to invite another attack thereon, this fact does not so far amount to a declaration of invalidity as to authorize a court of inferior jurisdiction to fly in the face of the express holdings in the Doremus Case, and Jin Fuey Moy Case, and others cited above. Teter v. United States (C. C. A.) 12 F.(2d) 224; Sofge v. Snook (C. C. A.) 15 F.(2d) 561. Till the Supreme Court of the United States shall see fit to change its ruling, both the law and decent comity forbid this court's attempting to do so for it, whatever upon the point may be the personal views of any or of all of its constituent members.

[3] The question whether the first count does not embrace the identical facts and acts charged in the second count is a serious and difficult one. That the two statutes are so far dissimilar as that both may be violated, and that both are capable of violation by wholly dissimilar acts, is too plain for dispute. The trouble is not with the law but with the facts. This possibility of a violation of either statute by wholly different acts is readily demonstrable. Many of the cases seem to make the latter possibility the test which saves the situation from double jeopardy. We think, however, it is a question of what was actually done rather than a question of what might have been done. Defendant concededly might have made a sale of morphine without sending such morphine through the mail, or he might have sent morphine through the mail, or shipped it by express or by freight, and thus have been guilty on the second count, without making a sale. The matter is one about which in principle there is some seeming diversity of opinion. Cf. Gray v. United States (C. C. A.) 14 F.(2d) 366, and Roark v. United States (C. C. A.) 17 F.(2d) 570. This is obviously so, if the law has not

been settled by the opinion of the Supreme Court of the United States in the late case of Albrecht v. United States, 273 U. S. 1, 47 S. Ct. 250, 71 L. Ed. ——. Again, whether the Albrecht Case is in conflict with the Gray Case and thus the paramount law is not wholly clear, because of a fact in the former (which we italicize in the below excerpt), which was not present in the Gray Case. This possibly distinguishing fact is embodied in the below excerpt thus: "One may obviously possess liquor without selling, and one may sell and cause to be delivered a thing of which he has never had possession; or *one may have possession and later sell, as appears to have been done in this case.*" In other words, *defendant in the Albrecht Case had already consummated or committed the offense of unlawfully possessing liquor before he began the act or series of acts which made him guilty of the unlawful sale of liquor.*

In the case at bar defendant had, it is true, already begun to commit the offense of unlawfully selling morphine before he began doing the act which made him guilty of sending morphine by mail to Draper. He had already received payment of the purchase price and had impliedly agreed to sell. The single fact of delivery was the only element remaining to be done in order to consummate the unlawful sale. This act of delivery was had by sending the morphine by mail, and not by the act of a manual transfer from buyer to seller. Thus the delivery which was necessary to consummate the sale was had in a manner and form and by an act which has itself been by statute denounced as an offense. The act of delivery through the use of the mail was in this case an element necessary to both offenses, and without which neither could have been consummated. And defendant, having both offenses in course of final commission, completed them both by the doing of one identical act. If he had repented, but the instant before he made the delivery, he would not have been guilty, and could not have been convicted of either offense.

[4] The cases of Morgan v. Devine, 237 U. S. 632, 35 S. Ct. 712, 59 L. Ed. 1153, Burton v. United States, 202 U. S. 344, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362, Gavieres v. United States, 220 U. S. 338, 31 S. Ct. 421, 55 L. Ed. 489, Ebeling v. Morgan, 237 U. S. 625, 35 S. Ct. 710, 59 L. Ed. 1151, and Colbeck v. United States (C. C. A.) 14 F.(2d) 801, are, we think obviously distinguishable from the case at bar. If so it be that the case of Roark v. United States, supra, cannot be distinguished, we must perforce follow the rule in the Albrecht Case. If we have above

correctly interpreted the Albrecht Case, it is not on the facts, in conflict with the view we are constrained to hold here; that is, that the instant situation discloses a case of double jeopardy. We think the true rule, deducible both from the cases and the reason of the thing, is "that, where, as in this case, a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense." In re Nielsen, 131 U. S. loc. cit. 188, 9 S. Ct. 676, 33 L. Ed. 118. In the above excerpt, the Supreme Court obviously used the word "incidents" in the same sense as the word *"elements."* So assuming, the Nielsen Case is squarely in point with the situation here presented.

[5] The contention that defendant was entitled to have a trial jury selected from the entire panel embraced in the venire for the term is, of course, too frivolous for extensive notice. All he was entitled to was a jury of 12 unbiased and unprejudiced jurors out of any part of the regular panel, if there were enough of such panel not engaged in other cases on trial to provide so many; if not, then a jury composed of talesmen, together with such remainder of the regular panel as a nucleus, as were not otherwise engaged and serving. The former he got, and he can ask no more.

[6, 7] The point most strenuously urged is that the facts disclosed a plain case of entrapment. The brief facts already stated show that this contention is wholly without merit. True it is, that one who is not, and recently perhaps has not been engaged in violating the law, and who presently has no intention of violating it, may not through sympathetic appeals, or other impelling machinations of officers, or so-called stool pigeons be induced to commit a crime and then be prosecuted and convicted for committing it. But one who, as was defendant, is engaged in the business of unlawfully selling narcotics, may, by any ordinary and usual means of approach, be led to make another sale seemingly in the usual course of his dealings and then be prosecuted therefor. The cases are so numerous and the question is so well-settled as really to call for no citation of authority or additional exposition. But the curious may consult the below cases: Price v. United States, 165 U. S. 311, 17 S. Ct. 366, 41 L. Ed. 727; Andrews v. United States, 162 U. S. 420, 16 S. Ct. 798, 40 L. Ed. 1023; Goode v. United States, 159 U. S. 663, 16 S. Ct. 136, 40 L. Ed. 297; Grimm v. United States, 156 U. S. 604, 15 S.

Ct. 470, 39 L. Ed. 550; Fiunkin v. United States (C. C. A.) 265 F. 1; Lucadamo v. United States (C. C. A.) 280 F. 653; Smith v. United States (C. C. A.) 284 F. 673; Partan v. United States (C. C. A.) 261 F. 515; Zucker v. United States (C. C. A.) 288 F. 12; Nutter v. United States (C. C. A.) 289 F. 484; Fisk v. United States (C. C. A.) 279 F. 12; Rossi v. United States (C. C. A.) 293 F. 896; DeLong v. United States (C. C. A.) 4 F.(2d) 244; Weiderman v. United States (C. C. A.) 10 F.(2d) 745; Spring Drug Co. v. United States (C. C. A.) 12 F.(2d) 852.

[8, 9] Touching the reference in argument of counsel for the government to the appearance of defendant and the inference drawn therefrom that he was still handling narcotics, it is enough to say that the point was not preserved for review here. No objection was made to it, and the trial court was not given a chance to cure it by rebuke or otherwise, which it might well have done, if it was hurtful, and if such action had been requested. Any act of the court itself may be preserved by a mere exception, but inimical acts of adverse counsel, witnesses, and others must be called to the attention of the trial court by an objection (grave errors, of course excepted, which this court may notice sua sponte), followed by an exception to the ruling of the court, if he fail by his ruling to afford adequate correction of the matter to which objection is made. If the matter under discussion was an error, it was not a grave one, and so it falls without the category of errors, which this court will notice of its own volition.

[10] We think the contention of defendant is well taken, that the court erred in saying to the jury in the course of his charge, "If you find him guilty in one charge, you must find him guilty in both." This was a peremptory charge to find defendant guilty on one of the counts—it is of course, impossible to say on which one—and was therefore error. Nothing is more fundamental or better settled than that a trial court may not instruct a jury to convict one on trial for a crime, however clear may be the evidence of guilt. It has seemingly been doubted (Atwell, Fed. Crim. Law & Proc. 26), erroneously, of course (West v. Gammon [C. C. A.] 98 F. 426; United States v. Lair [C. C. A.] 195 F. 47; Hallinger v. Davis, 146 U. S. 318, 13 S. Ct. 105, 36 L. Ed. 986), whether a federal District Court may even proceed to sentence in a felony case upon a plea of guilty in open court, without submitting the question of guilt to a trial jury for their verdict on such plea.

[11] This error in the charge was induced by the situation confronting the court. If the trial jury credited the evidence adduced by the government, as the final result shows they did, any other verdict than that of guilty on both counts, if accused were found guilty on either, would have been contradictory. Obviously, and bearing upon the question already discussed, there can be no better proof of the existence of double jeopardy than the fact that an acquittal on one count of an indictment and a conviction on another inevitably brings about a contradiction on the face of the verdict. Singleton v. United States (C. C. A.) 294 F. 890. We think the trial court should, of his own motion, have required the government to elect at the close of the evidence; or that the jury should have been charged that, if they found defendant guilty on either count, they should acquit him on the other. This would have been fully warranted by the reason, if for no other, that the facts were for the jury. They might, for example, have discredited a part of the evidence and found that defendant sent the morphine through the mail, but that it was a gift and not a sale. At least, no peremptory instruction to the jury to find one on trial for a crime, guilty is ever warranted. The failure of the court to require an election brought about a situation which induced, we repeat, the error in his charge.

[12–15] There is, we think, no substance in the contention that there was a variance between the indictment which charged that morphine was sold and sent through the mail and the proof which showed that morphine hydrochloride was the specific sort of morphine dealt with. It is settled that courts will judicially notice that morphine is the chief alkaloid derivative of opium. We think it may also be so noticed that commercial morphine is ordinarily of three sorts, acetate, sulphate and hydrochloride, and that each of them is a narcotic derivative of opium. Webster's Dictionary. In short, morphine is the genus; the various commercial and pharmaceutical salts thereof are merely species. The most that defendant was entitled to ask was that by a bill of particulars he be advised touching the particular species of morphine he was accused of having dealt with. This he did not ask, and, if he had done so, and such information had been refused, it is impossible to see wherein such refusal, being obviously nonhurtful, would have constituted error.

Many other errors are urged, but none of them other than those mentioned need be noticed. They are either obviously not well taken, or are such as will not necessarily occur on another trial.

We are of the opinion that the case should be reversed and remanded for a new trial, and so it is ordered.