STATE of Missouri, Respondent,

v.

Ronald TREADWAY, Appellant.

No. 60140.

Supreme Court of Missouri,
En Banc.

Nov. 10, 1977.

Respondent's Motion for Rehearing
Denied Dec. 19, 1977.

Terry Burnet, Charles H. Mostov, St. Louis, for appellant.

J. Mike Davis, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

Appellant, Ronald Treadway, was convicted in one count of robbery in the first degree (§ 560.120, RSMo 1969) and in one count of armed criminal action (§ 559.225, RSMo Supp.1976), in the Circuit Court of the City of St. Louis. Punishment on the first count was assessed at fifteen years. Punishment on the second count was assessed at three years to commence at the expiration of the sentence imposed on the first count. Following rendition of judgment and imposition of sentence an appeal was perfected to this Court.

Evidence at trial showed that on September 25, 1976, Rotha Grimes, her daughter and granddaughter, and Sandra Bequette and her two children drove to Rinderer's Drug Store at 3501 Carter. Mrs. Grimes, the driver of the car, parked at the curb beside the drug store. Mrs. Grimes' daughter, Jerri Hanks, left the car and entered the drug store, leaving her purse on the floorboard of the front passenger's side where Mrs. Bequette was sitting. Two males then approached the vehicle. One of these men was identified by Mrs. Grimes as the appellant, Ronald Treadway. Appellant opened the car door on the passenger's side of the car while his companion stuck a gun inside the car, pointing it at Mrs. Grimes and Mrs. Bequette. Appellant leaned in and demanded the two women give him their purses. Mrs. Grimes told appellant to get out, then slapped his hand as he reached to remove the purses from the front seat between the two women. Appellant then stated, "Give me your purses or we'll kill you." Mrs. Grimes responded by slapping his hand again and blowing the horn. Appellant then hit Mrs. Bequette's leg with his fist and knocked her foot off of Mrs. Hanks' purse, grabbed the purse, and the two men ran from the car.

Mrs. Grimes called the police immediately after the incident and described appellant's facial characteristics and clothing to the responding officer. She was unable to give a height and weight description other than by comparing appellant's build to that of a passerby, which the officer noted. Mrs. Grimes subsequently identified appellant's photograph from photographs shown to her by the police. She also identified appellant from a lineup conducted at a police station. Mrs. Bequette was unable to give a description to the police or to identify anyone as her assailant.

Based on this evidence, the jury returned verdicts of guilty on the charges of robbery in the first degree and armed criminal action. Appellant was sentenced to terms of fifteen years on the robbery count and three years on the armed criminal action count, said terms to run consecutively. The trial court indicated it felt it did not have discretion to sentence appellant to concurrent terms because of the provisions of § 559.225, RSMo Supp.1976, the armed criminal action statute.

Appellant first alleges that the trial court erred in refusing to strike for cause juror Robert Duke because Mr. Duke indicated at one point in voir dire examination that he felt the fact that the State had charged the appellant with a crime should be considered and he believed the State had the basis of a case. During Mr. Duke's examination the following took place:

"MR. BURNET: . . . Now, as Mr. Carmody indicated to you, the fact that Mr. Treadway was charged is no evidence whatsoever that he's guilty of this crime, alleged crime. Now, Mr. Duke, do you understand that principle?

"MR. DUKE: No, I don't, sir.

"MR. BURNET: The principle is that the fact the man has been charged is no evidence.

"MR. DUKE: I understand that.

"MR. BURNET: You understand?

"MR. DUKE: You're innocent till you're proven guilty, I understand that.

"MR. BURNET: Would you consider the fact that he has been charged with this robbery any evidence that he's committed it?

"MR. DUKE: I think the evidence should be considered.

"MR. BURNET: You consider the fact that the State has charged this man, that the State has charged this man as to the guilt?

"MR. DUKE: Yes. They have the basis of a case.

"MR. BURNET: All right. May we approach the bench?

*    *    *    *    *    *

"THE COURT: I didn't hear his answer.

"MR. BURNET: Would you repeat your answer, please?

"MR. DUKE: Sir, I think if the State did not have a case, they probably wouldn't have filed it in Court.

"THE COURT: Well, Mr. Duke, I think what both lawyers are trying to tell you is that before the defendant can be found guilty, the guilt must be proven beyond a reasonable doubt.

"MR. BURNET: I'd move to strike.

"MR. CARMODY: Judge, I'd like to have the opportunity of examining him before he's stricken for cause.

"THE COURT: And, the mere fact that he has been arrested; and the mere fact that he has been charged with a crime does not mean that he's guilty. That's what the lawyers are trying to tell you. You understand that?

"MR. DUKE: Yes.

"THE COURT: And, until the State comes forward with enough evidence to prove that he's guilty beyond a reasonable doubt, he's presumed to be innocent. That's what the law says. Now, you agree with that?

"MR. DUKE: I agree with that.

"THE COURT: The mere fact that he has been arrested and he has been charged with a crime, do you believe that to be evidence that he's guilty?

"MR. DUKE: No, sir.

"THE COURT: All right.

"MR. BURNET: But, Your Honor, that is not the question I asked the man. I asked the man if the fact that he was charged, if he believed that was any evidence of this crime, and he indicated, yes.

"THE COURT: I asked him the same question.

"MR. BURNET: I make a move to strike. I make a move to strike Juror # 132 on that basis.

"THE COURT: What does the State have to say?

"MR. CARMODY: Your Honor, I think the gentleman just responded that he would not consider the fact that the man is charged with a crime as evidence of his guilt. I think that possibly the way that Mr. Burnet phrased his initial question may have confused him somewhat. But,

I think that now, he has stated unequivocally that he would not consider that as evidence of his guilt, and that he would presume the man to be innocent and the State would have to prove guilt beyond a reasonable doubt.

"THE COURT: That's what I understood, too. All right, he will not be struck for cause.

\*    \*    \*    \*    \*    \*

"MR. CARMODY: Judge, I'm just going to clarify his answer if I may. Mr. Duke, just for purposes of clarification, are you saying that you would be able to presume the defendant to be innocent; and that you know that the State has to prove his guilt beyond a reasonable doubt? Can you apply those two things?

"MR. DUKE: I think so.

"MR. CARMODY: Okay. And, you would not assume that as evidence, the fact that he's charged with a crime? In other words, he stands charged with a crime, would you use that as evidence, or would you just listen to the evidence from the witness stand? Would you use the fact that he's charged with a crime as evidence?

"MR. DUKE: No."

■ In determining the qualifications of a prospective juror, the trial court has very wide discretion, and the court's ruling will not be disturbed on appeal unless it is clearly against the evidence and constitutes a clear abuse of discretion. *State v. Jones*, 384 S.W.2d 554 (Mo.1964); *State v. McGrew*, 534 S.W.2d 549 (Mo.App.1976). All doubt should be resolved in favor of the finding of the trial court because he is in a far better position to determine a challenge for cause than an appellate court. *State v. McGrew*, supra.

■ In determining whether or not a venireman can act impartially, it is necessary to view all the facts presented and not selectively include or exclude certain facts. In the instant situation, venireman Duke appeared to indicate in answer to questions by defense counsel that he would consider the fact that appellant had been charged

with a crime as some evidence of guilt. However, upon further questioning by the court, Mr. Duke's views were clarified and he indicated that he would not consider the fact that appellant was charged with a crime as evidence of guilt. Further, Mr. Duke indicated that he understood and agreed with the presumption of innocence and the reasonable doubt standard. Under these circumstances it cannot be said that the trial court abused its discretion in refusing to strike Mr. Duke for cause. *State v. Drake*, 518 S.W.2d 335 (Mo.App.1975).

Appellant relies on the cases of *State v. Holliman*, 529 S.W.2d 932 (Mo.App.1975); *State v. Carter*, 544 S.W.2d 334 (Mo.App. 1976); and *State v. Thompson*, 541 S.W.2d 16 (Mo.App.1976) to substantiate his contention that it was error for the trial court not to strike Mr. Duke for cause. In each of these cases, a venireman indicated some prejudice which would disqualify him from service. In *Thompson* and *Carter* the trial court summarily denied the motions to strike for cause without asking any clarifying questions. In *Holliman*, the trial court indicated he felt he was bound by the venireman's own assessment of his ability to provide the defendant with a fair trial and failed to exercise discretion. These situations differ from the instant case because the trial court affirmatively exercised his discretion in asking clarifying questions of Mr. Duke to determine his suitability as a juror. An abuse of this discretion is not shown by the record.

Appellant next asserts that the trial court committed reversible error by sustaining the prosecutor's objection to a portion of defense counsel's closing argument. During closing argument defense counsel stated:

> "She hangs her hat on what she observed of his face. Well, you get those pictures, you ask for those pictures. Did you hear her mention the scar over Mr. Treadway's eye? Did you hear her mention the scar on the middle of his forehead?"

The prosecuting attorney then objected on the ground that there was no evidence of any scars and was sustained. Defense counsel indicated that the scarring over appellant's eyes was evident from the photographs introduced into evidence, but the trial court again sustained the objection on the basis the argument was beyond the scope of the testimony. The jury subsequently requested appellant's photographs during their deliberations.

Although Rotha Grimes testified that she identified appellant based on his facial characteristics, she was neither questioned about nor mentioned scarring on appellant's face. The sole reference to scars during testimony was a question asked of the responding police officer by defense counsel pertaining to whether Mrs. Grimes had mentioned body scars to him at the time she gave the officer a description of her assailant. The photographs to which defense counsel referred in his closing argument were introduced into evidence by the State for the purpose of Mrs. Grimes' identification testimony.

■ The general rule is that counsel may properly comment in closing argument on matters in evidence and may draw inferences from the evidence. *State v. Fields*, 314 S.W.2d 723 (Mo.1958). Since the photographs were in evidence, the trial court in this instance erred in sustaining the prosecutor's objection to defense counsel's argument regarding appellant's photographs and the absence of any indication that Mrs. Grimes noticed scars on her assailant's face.

■ However, the error was not prejudicial to appellant. Questions of the propriety of oral argument are addressed to the discretion of the trial court, and an appellate court will not interfere absent abuse of that discretion *and* prejudice to the appellant. *State v. Ball*, 529 S.W.2d 901 (Mo. App.1975). While the State's objection to defense counsel's argument was sustained, the argument was not stricken and counsel clearly got the matter before the jury. This is evidenced by the fact that counsel admonished the jury to examine the photographs of appellant in their deliberations and the jury subsequently requested these photographs for examination. Since coun-

sel successfully got his argument before the jury, the trial court's ruling does not constitute reversible error. *State v. Banks*, 468 S.W.2d 623 (Mo.1971).

Appellant next contends that the trial court erred in overruling his motion to dismiss Count II of the information, the armed criminal action count, because prosecution for both first degree robbery and armed criminal action places appellant in double jeopardy for the same offense. Appellant asserts that his rights under Article I, § 19, Mo.Const., are thus violated. Article I, § 19 prohibits a person being put "again in jeopardy of life or liberty for the same offense, after being once acquitted by a jury . . . ." This section does not technically apply to appellant's situation, but Missouri's common law prohibition against a defendant being placed twice in jeopardy precludes a second conviction and punishment for the same offense. *State v. Toombs*, 326 Mo. 981, 34 S.W.2d 61, 63 (1930). Further, there is no readily discernible difference between the Fifth Amendment guarantee against double jeopardy, enforceable against the states through the Fourteenth Amendment, and the common law guarantee as applied in this State. *State v. Richardson*, 460 S.W.2d 537, 538 (Mo. banc 1970).

In determining double jeopardy, Missouri follows the separate or several offense rule rather than the same transaction rule. *State v. Carter*, 535 S.W.2d 537, 538 (Mo.App.1976).

". . . This means that a defendant can be charged with and convicted of several offenses which arise from the same transaction, incident or set of facts, without violation of double jeopardy. *State v. Moton*, 476 S.W.2d 785, 788[3, 4] (Mo.1972). Indeed, the very same act can support multiple convictions without infringement of double jeopardy so long as the convictions rest on separate offenses. *State v. Whitley*, 382 S.W.2d 665, 666[2, 3] (Mo.1964).

"The double jeopardy doctrine is directed to the identity of the offense, and not to the act. *State v. Toombs*, 326 Mo. 981, 34 S.W.2d 61, 64[3] (1930). It forbids the State from piecemeal prosecution of an offense. In the determination of whether several charges from one act or transaction are identical, our courts look to 'whether each offense necessitates proof of an essential fact or element not required by the other'; if so, there is no identity of offense. *State v. Chambers*, 524 S.W.2d 826, 829[1, 2] (Mo. banc 1975)." *State v. Carter, supra.*

Appellant asserts that he was placed in double jeopardy by being tried and convicted of both robbery in the first degree and armed criminal action because both convictions stemmed from the same "act of force", *i. e.*, the pointing of a gun at Rotha Grimes and the subsequent theft of a purse which was in her custody. Appellant maintains that the State in effect prosecuted him for separate parts of a single offense, which is prohibited by the Fifth Amendment. *State v. Gordon*, 536 S.W.2d 811, 818 (Mo.App.1976). The State responds that appellant was not placed in double jeopardy because each offense requires proof of elements not required to prove the other. Under Missouri's several offense rule, such multiple convictions are permissible if the defendant has in law and in fact committed separate crimes. *State v. Toombs, supra*, 34 S.W.2d 61 at 64.

In *Kowalski v. Parratt*, 533 F.2d 1071 (8th Cir.), cert. denied, 429 U.S. 844, 97 S.Ct. 125, 50 L.Ed.2d 115 (1976), the defendant challenged his Nebraska convictions for robbery and use of a firearm in the commission of the robbery on double jeopardy grounds. Robbery is defined under a Nebraska statute as the forcible taking of property from another by violence or by putting in fear with intent to rob or steal. Neb.Rev.Stat. § 28–414 (Supp.1974). Under a separate statute, the use or possession of a firearm, knife, brass or iron knuckles, or any other dangerous weapon during any felony constitutes a separate felony calling for a consecutive three to ten year sentence. Neb.Rev. Stat. § 28–1011.21 (Supp.1974). The Eighth Circuit Court of Appeals held that the defendant's writ of habeas corpus was proper-

ly denied because under the test applied in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the defendant was not placed in double jeopardy since each offense required proof of a different element, although the same facts supported both convictions.

■ In Missouri, first degree robbery is defined in § 560.120, RSMo 1969:

"Every person who shall be convicted of feloniously taking the property of another from his person, or in his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person . . . shall be adjudged guilty of robbery in the first degree."

The fact that the crime is committed by means of a dangerous or deadly weapon is not an element of first degree robbery. *State v. Nelson*, 532 S.W.2d 855, 856 (Mo. App.1975).

Section 559.225, RSMo Supp.1976, provides that any person who commits any felony "by, with, or through the use, assistance, or aid of a dangerous or deadly weapon" is also guilty of the crime of armed criminal action.

■ The two offenses do not overlap. First degree robbery requires proof only of the taking of property by means of violence or fear. Armed criminal action requires proof of the use of a dangerous or deadly weapon during the commission of a felony. The use of a weapon is not an element of first degree robbery, although it may factually be a part of the transaction. As noted by the Eighth Circuit Court of Appeals in *Kowalski*:

"The 'gist' of the robbery charge is the taking of property by violence or fear. The 'gist' of the weapon offense is the use or possession of certain dangerous weapons in situations where it is particularly likely that the weapons may be used to injure victims, law enforcement officers, or bystanders." 533 F.2d 1071, at 1073.

Since the two offenses are not the same in law, appellant's double jeopardy protection has not been abrogated.

■ Appellant further contends that his conviction for armed criminal action is invalid because the armed criminal action statute is a general statute which may not be applied when a more specific statute, *i. e.*, first degree robbery, defines a crime and sets punishment. As noted above, armed criminal action and first degree robbery are two distinct offenses, and therefore do not overlap. Further, the Missouri first degree robbery statute does not now provide for an enhanced sentence due to the use of weapons. Section 560.135, RSMo Supp.1975, provides the same punishment for robbery in the first degree by means of a dangerous and deadly weapon and for robbery in the first degree *by any other means*. Such punishment is to be "imprisonment by the division of corrections for not less than five years." Thus, prosecution under the armed criminal action statute is not precluded due to a more specific statute imposing punishment for use of a weapon during the commission of a robbery. *Cf. United States v. Eagle*, 539 F.2d 1166 (8th Cir. 1976); *State v. Harris*, 337 Mo. 1052, 87 S.W.2d 1026 (1935).

Lastly, appellant alleges that the trial court erred in sentencing appellant to consecutive terms based on the court's belief that consecutive sentences are mandatory under § 559.225, RSMo Supp.1976. Section 559.225 states in part:

"The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous or deadly weapon."

A determination of whether sentencing under this section must be consecutive or may be concurrent hinges on the meaning of the words "in addition to". The statute itself gives no further indication of whether consecutive sentencing is mandatory.

■ In construing a penal statute, the general rule is that a criminal statute must be construed liberally in favor of the defendant and strictly against the state.

"It is an ancient rule of statutory construction and an oft-repeated one that penal statutes should be strictly construed against the government or parties seeking to exact statutory penalties and in favor of persons on whom such penalties are sought to be imposed. When the law imposes a punishment which acts upon the offender alone, and it is not a reparation to the party injured, and the punishment is entirely within the discretion of the law giver, it will not be presumed that the legislature intended the punishment to extend farther than is expressly stated.

  *   *   *   *   *   *

And as a corollary of the rule, in case of doubt concerning the severity of the penalty prescribed by a statute construction will favor a milder penalty over a harsher one." 3 Sutherland, Statutory Construction § 59.03 (4th ed. 1974).

█ The words "in addition to", standing alone, do not clearly mandate that a sentence under the armed criminal action statute be imposed consecutive to a sentence for the felony conviction upon which the armed criminal action charge is based. The phrase is defined in Webster's Third New International Dictionary 24 (3rd ed. 1966) as meaning "over and above". Whether the sentence under § 559.225 is imposed consecutively or concurrently, it is clearly "over and above" that imposed for the basic felony. In the absence of express language by the legislature mandating that sentences under § 559.225 be consecutive, it appears that the trial court should be able to sentence a defendant consecutively or concurrently as it sees fit. *Wright v. State*, 24 Md.App. 309, 330 A.2d 482 (1975).

█ Appellant is not entitled to a new trial. However, the judgment of the trial court is reversed and the case is remanded for resentencing wherein the trial judge shall exercise his judicial discretion with reference to whether sentences imposed on the two counts are to be concurrent or consecutive. *State v. Baker,* 524 S.W.2d 122, 131 (Mo. banc 1975).

MORGAN, C. J., and BARDGETT, HENLEY, FINCH and RENDLEN, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

SEILER, Judge, dissenting.

I respectfully dissent from that portion of the principal opinion concerning whether defendant's conviction under Count II for armed criminal action constitutes a second conviction for the same offense in violation of his rights under the double jeopardy clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment and the common law prohibition against double jeopardy as applied in Missouri. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *State v. Richardson*, 460 S.W.2d 537 (Mo. banc 1970); *State v. Toombs*, 326 Mo. 981, 34 S.W.2d 61 (1930).

The double jeopardy clause prevents the state from punishing a defendant more than once for the same offense. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568–570 n.6, 97 S.Ct. 1349, 1353 n. 6, 51 L.Ed.2d 642 (1977); *State v. Toombs*, supra, 34 S.W.2d at 63; *State v. Gordon*, 536 S.W.2d 811, 818 (Mo.App.1976). The offenses are "the same" for purposes of double jeopardy unless each requires proof of an additional fact which the other does not. *Jeffers v. United States*, 432 U.S. 137, 150, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 (1977); *Brown v. Ohio*, 432 U.S. 161, 168, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

The majority opinion, following *Kowalski v. Parrott*, 533 F.2d 1071 (8th Cir.), cert. denied, 429 U.S. 844, 97 S.Ct. 125, 50 L.Ed.2d 115 (1976), observes that the "use of a weapon is not an element of first degree robbery, although it may factually be a part of the transaction." Thus since "the two offenses are not the same in law, appellant's double jeopardy protection has not been abrogated." In the present case, however, as discussed later herein, we are

not dealing with a detached theoretical application of our statutory scheme.

*Kowalski,* supra, upon which the majority relies, is based in large part upon the traditional reading of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the dimension of which is discussed in the principal opinion, and upon *Michener v. United States,* 157 F.2d 616 (8th Cir.), *rev'd,* 331 U.S. 789, 67 S.Ct. 1509, 91 L.Ed. 1818 (1946) (per curiam). In *Michener,* the 8th Circuit panel considered the consecutive conviction and sentencing of the defendant for both manufacture and possession of a counterfeiting plate in violation of 18 U.S.C. § 264 (1940).

"There can be no doubt," the court said, "but that separate offenses might be charged and proved under this statute, but that does not solve the question here presented. We must interest ourselves not with what might have been done, but what was actually done in this case." *Id.* at 618.

The United States Supreme Court, in a 6–3 one-paragraph per curiam opinion reversed the 8th Circuit, citing *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and *Albrecht v. United States,* 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1927). *Albrecht,* involving a multiple count prosecution under the National Prohibition Act, ruled in appropriate part that "[t]he fact that the person sells the liquor which he possessed does not render the possession and the sale necessarily a single offense." *Id.* at 11, 47 S.Ct. at 254. In the instant case, the sale/possession distinction is not helpful. Defendant and his companion committed the robbery, placing their victim in fear by brandishing the weapon which is the singular object of the second count upon which defendant was convicted. Had he committed the robbery without a weapon, he obviously could not have been tried independently for armed criminal action. Thus *Albrecht* is not instructive because sale and possession of unlawful material are distinctly different crimes. Under the facts of this case, there is nothing distinctive about the crime of armed criminal action.

*Blockburger,* supra, upon which *Michener* and the majority opinion here so strongly rely, has been recently and significantly modified with respect to the exclusivity of its test for judging whether one or two offenses have been committed in a multiple count prosecution under circumstances such as are found in the present case.

"The *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires relitigation of factual issues already resolved by the first." *Brown v. Ohio,* 432 U.S. 161, 166 n. 6, 97 S.Ct. 2221, 2226 n. 6, 53 L.Ed.2d 187 (1977).

In the instant case the defendant is being punished twice for two offenses the factual basis of which is exactly identical. No additional fact is here required for his conviction of armed criminal action other than that which was proved as an essential element of his conviction for robbery in the first degree. However we may theoretically construct and construe these statutes so as to recognize that they might be constitutionally secure, this defendant under these facts in *this* case is being punished twice for the same offense, namely robbery. His rights should not depend upon a conceivable construction of two statutes, his conviction under one of which was wholly and completely dependent upon his conviction under the other. When " 'a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense.' " *Brown v. Ohio,* supra, 432 U.S. at 168, 97 S.Ct. at 2226, quoting *In re Nielsen,* 131 U.S. 176, 188, 9 S.Ct. 672, 33 L.Ed. 118 (1889).

As an example, *Brown* strongly relies upon and "merely restates" the holding of *In re Nielsen,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), where the court held that a conviction of a Mormon on a charge of

cohabiting with his two wives over a two and one half year period barred a subsequent prosecution for adultery with one of them on the day following the end of that period. The court pointed out that conviction for adultery required proof that the defendant had sexual intercourse with one woman while married to another, while conviction for cohabitation required proof that the defendant lived with more than one woman at the same time. Obviously, these two offenses did not overlap, they were not the same in law, which according to the principal opinion in the present case would mean there was no double jeopardy. Yet, the court in *Brown v. Ohio*, supra, 432 U.S. at 166 n. 6, 97 S.Ct. at 2226 n. 6, said that the separate offenses in *Nielsen* were held to be the "same" for purposes of protecting the accused from having " 'to run the gantlet' a second time."

So it is here. It is true that robbery can be committed without the use of a gun. But as pointed out in *Cain v. United States*, 19 F.2d 472, 474 (8th Cir. 1927) this does not necessarily save the situation from double jeopardy. In *Cain*, the 8th Circuit followed *Nielsen*, supra, and held there was double jeopardy in a case where the defendant was charged in one count with selling narcotics to one Draper and in a second count with sending narcotics to Draper by mailing them to him. The court said: "The question whether the first count does not embrace the identical facts and acts charged in the second count is a serious and difficult one . . . The trouble is not with the law but with the facts. This possibility of a violation of either statute by wholly different acts is readily demonstrable . . . We think, however, it is a question of what was actually done rather than a question of what might have been done." When the taking of the property is done by fear produced by the use of a gun, as was the case here, that particular robbery could not be committed without the use of a gun. When the prosecutor established robbery under the facts of the present case he necessarily also established armed criminal action. This makes the defendant run the gantlet twice when he is tried and punished for both.

Needless to say, the fact that this is all being done in one trial with two counts, is no different with respect to the double jeopardy risk than doing it in successive prosecutions, as was the case in *Nielsen*, supra. The double jeopardy clause protects against multiple punishments for the same offense, *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

I would therefore reverse the conviction on Count II.