**STATE of Missouri, Respondent,**

v.

**Terry DICKSON, Appellant.**

**No. 40747.**

Missouri Court of Appeals,
Eastern District,
Division Four.

March 11, 1980.

Springfield Baldwin, St. Louis, for appellant.

John Ashcroft, Atty. Gen. by Lisa M. Camel, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Judge.

Defendant appeals from a conviction of second degree burglary and a sentence of 7 years imprisonment. He presents three points on appeal. Finding one to have merit, we reverse and remand and do not discuss the other points raised by defendant since they are not likely to arise again on retrial.

White Shopping Services, Inc. operates a uniform and clothing store located on the northwest corner of the intersection of Natural Bridge and Taylor Avenues in the City of St. Louis. Natural Bridge runs east and west and Taylor runs north and south. According to the state's evidence, early one morning in July, 1977, Officer Whitfield, a St. Louis police officer, was driving east on Natural Bridge and, as he approached the noted intersection, he saw two individuals exiting White Shopping Services' store through a broken window on to Natural Bridge. Apparently, when Officer Whitfield was directly opposite and about three to four car lengths from the store, he observed the individuals' clothing and also noticed that each one of them was carrying an object in his hands. One of the individuals was wearing a red shirt and tan trousers, and the objects appeared to be some sort of machines. Officer Whitfield saw these individuals only "momentarily", for, after they alighted on to Natural Bridge,

they turned the corner and appeared to be headed north on Taylor. After he lost sight of the individuals, Officer Whitfield turned his car north on to Taylor to follow, caught sight of the two individuals on Taylor, a short distance north of White Shopping Services' store and, at that time, Whitfield saw each of these two individuals drop objects from their hands. Whitfield arrested the two individuals, one of whom was defendant and the other was a Michael Hurn.

Officer Whitfield was not asked and did not specifically identify defendant as one of the individuals whom he saw coming through the store window, apparently, because, at that time, the individuals were only momentarily in his sight; and, even though it was only shortly thereafter that Whitfield caught sight of two individuals on Taylor, part of the inventory missing from the store—some shirts, underwear and shoes—was never recovered. However, the color of defendant's shirt and trousers apparently matched the red shirt and tan trousers worn by one of the individuals who exited through the store window, and the two objects which, according to Officer Whitfield, were dropped by defendant and Michael Hurn turned out to be an adding machine and a sewing machine owned by White Shopping Services. In addition, a pendant and a watch, also owned by White Shopping Services, were seized from Hurn. Later, fingerprints were lifted from broken glass found inside the store and a palm print was lifted from a plastic case which held the adding machine. Most of these prints were smudged and unidentifiable. Of those remaining prints which were identifiable, only one print was identified—the palm print of Hurn which had been lifted from a plastic case holding the adding machine.

Defendant took the stand in his own behalf and denied any participation in the burglary. According to his testimony, he had been visiting a girlfriend, and, while walking home, east on Natural Bridge, on the northside of the street, he noticed a man on the southside of Natural Bridge, also walking east. Defendant later learned this man to be Michael Hurn. Hurn crossed the street, and defendant asked Hurn for a cigarette, which Hurn gave him. Defendant continued to walk east, with Hurn some distance behind him. When defendant arrived at the White Shopping Services' store, he noticed that the store window was broken. He looked into the store, did not stop and continued walking. He turned the corner at Taylor, began walking north and, at that time, saw a man carrying a green trash can and running across a parking lot, located on the opposite side of Taylor, on the northeast corner of the intersection. Shortly thereafter, Officer Whitfield called defendant over to his police car, asked defendant "where it was at" and, among other responses, defendant told the officer about the man running across the parking lot. Defendant also testified on direct examination that he previously had been convicted of "armed robbery". On cross-examination, defendant again was asked whether he had a prior conviction, and, after stating again that he had plead guilty to "armed robbery", he added that he had been paroled on that offense and "got off parole on October 17, 1977", some three months after the incident in question.

In his closing argument defense counsel reminded the jury that defendant's parole was ending at the time of the alleged burglary. At that point, the assistant circuit attorney objected to this argument on the grounds that it was irrelevant and immaterial. The court sustained the objection and instructed the jury to disregard the statement of defense counsel. Defendant made an offer of proof that, if allowed to pursue this argument, he would argue that defendant was gainfully employed at the time of the burglary and, since defendant was on parole, he would not attempt a burglary and run the additional risk of having his parole revoked. The court overruled this offer of proof and again sustained the state's objection.

On appeal, defendant contends that it was prejudicial error for the trial court to preclude him from arguing that defendant's parole status made it improbable that defendant committed the burglary in issue. We agree.

■ We have long recognized that control of oral argument is within the discretion of the trial court, *see, e. g., State v. Kimmins*, 514 S.W.2d 381, 382 (Mo.App. 1974) and, ordinarily, we will not interfere with this control unless the trial court abuses its discretion to the prejudice of the defendant. *E. g., State v. Smith*, 527 S.W.2d 731, 733 (Mo.App.1975). However, on the present record, we find the trial court committed error which prejudiced the defendant.

■ A trial court must carefully refrain from unduly restricting the arguments of counsel. *See, State v. Florian*, 355 Mo. 1169, 200 S.W.2d 64, 68 (1947). Counsel should not only be allowed wide range in organizing the facts for the jury in a pattern most favorable to his client, he must also be permitted to argue from the facts those reasonable inferences which most strongly favor his client. *See State v. Treadway*, 558 S.W.2d 646, 650 (Mo. banc 1977);[1] *State v. Ball*, 529 S.W.2d 901, 908 (Mo.1975). It is error not to permit counsel this latitude in his closing argument. *See State v. Treadway, supra* at 650; *State v. Ball, supra* at 908.

In the instant case, defendant's status as a parolee was an unobjected to fact before the jury. As outlined in his offer of proof, defense counsel's inference from and argument based upon that fact was simple, direct and rational: defendant did not commit the burglary in issue because he had only three more months left on parole and, therefore, he would not want to run the additional risk of having his almost completed parole revoked. This argument was not only plausible and sensible, but, on the present record, it was critical. The state had elicited defendant's prior conviction on cross-examination to impeach defendant's credibility, and, in the last half of its closing argument, the state would and properly did use this prior conviction explicitly and extensively to impeach defendant's credibility. To counter and offset this line of attack, defense counsel wanted to and should have been allowed to develop his argument that defendant's testimony as to what took place was credible testimony because of defendant's status as a short term parolee from his prior conviction.

■ A twin aspect of this argument was defense counsel's attempt to argue that defendant had no motive to commit the burglary in question. The state argues that motive is not an element of burglary and, therefore, argues that motive was neither relevant or material in the instant case. We disagree. Admittedly, motive is not an element of the crime charged and, thus, there was no need to formally instruct the jury on motive. *E. g., State v. Parker*, 509 S.W.2d 67, 71 (Mo.1974). Nonetheless, defendant did take the stand and deny the acts in question. Thus, the question of motive became important and the absence of motive, arguably, shows innocence. *State v. Stapleton*, 518 S.W.2d 292, 296 (Mo. banc 1975). In such a case, lack of motive is a proper matter for argument before the jury. *See State v. Aitken*, 240 Mo. 254, 144 S.W.2d 499, 503 (1912). Thus, the trial court erred in precluding defense counsel from arguing the relevant meaning of defendant's parole status. *See State v. Treadway, supra; State v. Ball, supra*.

The state admits that "revocation of parole and imprisonment may generally be considered deterrents to the commission of offenses", but the state contends that this logic has general application to all defendants on parole and charged with an offense and, therefore, the state reasons, the argument based upon defendant's parole status is not specifically relevant or material to defendant's defense. The state's contention begs the present question. The fact that others may make the same argument does not lessen the relevancy or propriety of the argument defense counsel attempted to make here. Furthermore, extension of the state's reasoning would cause illogical and unacceptable results. For example, if good

---

1. In *Sours v. State*, 593 S.W.2d 208, 1980, our Supreme Court overruled *State v. Treadway, supra*, on other grounds.

character is properly in evidence, the state's reasoning would preclude defense counsel from arguing good character simply because other defendants similarly situated could make the same argument.

■ Since the present error occurred during the trial of a criminal case, we presume the error to be prejudicial and we will not declare that error to be harmless unless it was so without question. *Kansas City v. Martin*, 369 S.W.2d 602, 608 (Mo.App.1963). To rebut and overcome this presumed prejudice, the state contends that the evidence of defendant's guilt was strong and, thus, the jury's verdict of guilty did not prejudice defendant. However, the state reaches its evaluation of the evidence by limiting its consideration solely to the state's evidence previously recited in this opinion. Obviously, since defendant testified, the state's evidence is not the only basis for evaluating the evidence determining defendant's guilt.

The apodictic evidence in this case, such as Michael Hurn's palm print on the adding machine and his possession of the pendant and watch, connects Michael Hurn directly to the burglary but not defendant. The rest of the evidence, stripped to its essentials, is a one-on-one confrontation between Officer Whitfield and defendant. Their testimony reflect disparate and, at times, contradictory explanations for defendant's presence and actions near the scene of the burglary. Thus, whether the evidence of defendant's guilt was strong, or, stated otherwise, whether this case was a close case, to a great extent, is determined by the relative credit and weight which is given to Officer Whitfield's and defendant's respective testimony. There is no litmus paper test for this determination. Moreover, there is an inherent risk in reviewing the evidence to make this determination, for the marshalling of the evidentiary facts to reach the conclusion that the evidence of a defendant's guilt was either weak or strong may be nothing more than an unwitting orchestration of those facts to reflect the perspective and credulity of the reviewer. We need not run that risk here because the procedural history of this case provides a more objective indicator which shows this case to be a close one.

■ First, defendant had previously been tried for the burglary in issue, and the present record shows that trial ended in a mistrial because the jury was unable to reach a verdict. Second, the jury in the instant trial had comparable difficulty in reaching a verdict, even without defense counsel countering the state's attack on defendant's credibility. After the cause was submitted, the jury did not return a quick verdict of guilty. On the contrary, the jury deliberated for over four hours, and, at that point, the trial judge, concluding the jury was having difficulty reaching a verdict, recalled the jury and gave the "hammer" instruction, MAI CR 1.10, which importunes the jury to try to reach a verdict. With this added instruction, the jury still did not quickly return, but deliberated for an additional hour before it reached its verdict. Thus, it is quite apparent that two separate groups of fact finders did not believe this case to be an "open and shut case" with the defendant caught "red-handed". Rather, their deliberations clearly indicate that, viewed from their perspective, the case against defendant was a close case, and we find no compelling reason to contradict the view reflected by the deliberations of those fact finders, who were carefully screened and selected by both the state and defendant.

The procedural history of the present case shows it to be a close case and, thus, rather than having the prejudice presumed from the trial court's error rebutted, the closeness of the case makes it more likely that the error did, in fact, operate to the prejudice of the defendant. *State v. Degraffeneid*, 477 S.W.2d 57, 65 (Mo. banc 1972); *State v. Reed*, 583 S.W.2d 531, 535 (Mo.App.1979).

Accordingly, we reverse and remand.

SMITH, P. J., and ALDEN A. STOCKARD, Special Judge.